COMMONWEALTH *vs.* LARRY MERRITT.

Suffolk.  September 16, 1982. — November 3, 1982.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Motor Vehicle,* Investigation of accident.  *Constitutional Law,* Admissions and confessions.  *Evidence,* Admissions and confessions.

A statement made by the registered owner of a motor vehicle outside his own home to a police officer before being advised of his Miranda rights, to the effect that he had been driving the vehicle when it struck a pedestrian a short while earlier, should not be suppressed from evidence at the owner's subsequent trial on charges of vehicular homicide and operating under the influence, since the officer's inquiry was limited and routine, and unaccompanied by curtailment of the owner's freedom of action in any significant way.  [603-606]

COMPLAINTS received and sworn to in the Boston Municipal Court Department on April 9, 1981.

A motion to suppress evidence was heard by *Burnham,* J.

*Muriel Ann Finnegan,* Assistant District Attorney, for the Commonwealth.

*Paul H. Carrigan* for the defendant.

GREANEY, J.  This case is before us on the Commonwealth's interlocutory appeal from the decision of a judge of the Boston Municipal Court, which allowed the defendant's motion to suppress oral statements made to a Boston police officer following an automobile accident.  G. L. c. 278, § 28E, as appearing in St. 1979, c. 344, § 45.  Mass.R. Crim.P. 15(a)(2), 378 Mass. 882-883 (1979).  After an evidentiary hearing, the judge made findings of fact from which she concluded, insofar as material to this appeal, that statements made by the defendant that he had been driving the automobile that struck a pedestrian, who later died, had been obtained in violation of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966).

At the hearing on the motion, Officer Joseph Keane of the Boston police department testified that, about 2:15 P.M. on April 8, 1981, he arrived at the scene of an automobile accident on East Brookline and Washington Streets in Boston, where he learned that a pedestrian had been struck by an automobile. In the course of his investigation, Officer Keane spoke to a young woman whose name he did not ascertain. She told him that her father had been driving the automobile that struck the victim and that he (her father) had the green light at the time of the accident. She also told the officer that her father had gone home to a nearby housing project on Monsignor Reynolds Way. She refused, however, to go to the residence and bring her father back to the scene. A second officer pointed out a Cadillac to Officer Keane as the vehicle involved in the accident.

Officer Keane went to the address given by the woman and met the defendant outside of the building. The officer asked the defendant if he owned the vehicle that had struck the pedestrian. The defendant replied that he did. The officer then asked the defendant if he had been driving the vehicle. The defendant answered that he had. The officer testified that after this exchange he placed the defendant under arrest, gave him Miranda warnings, and had him taken to the police station. The judge also found, apparently relying on the defendant's affidavit accompanying the motion, that the officer had asked the defendant whether he had been drinking and the defendant had responded affirmatively. According to the judge's findings, the defendant was placed under arrest and taken to the police station after the question about drinking had been asked and answered.

At the station, the defendant was booked and advised of his Miranda rights. The defendant was questioned again by Officer Keane. In response to this questioning, the defendant admitted, in Keane's words, that he was driving the car, that he had "hit the person," and that he was "on a drunk program." Officer Keane also testified that the defendant appeared "quite intoxicated." Another officer then asked the defendant whether he wished to take a breathalyzer ex-

amination. The defendant consented and scored a .20 on the examination. He was subsequently charged under G. L. c. 90, § 24G, with vehicular homicide, and under G. L. c. 90, § 24, with operating under the influence.

The judge concluded that the question concerning ownership of the vehicle was proper as an aid in investigation. She determined, however, that questioning beyond that point, including the question about the defendant's operation of the automobile, was improper because the investigation had focused on the defendant and the "interrogation . . . was custodial within the meaning of Miranda." She also suppressed the defendant's statements at the police station, concluding that there was insufficient evidence that the defendant voluntarily and intelligently waived his constitutional rights and that the defendant made the statements because the "cat was already out of the bag" as a result of the previous questioning. On this appeal, the Commonwealth challenges only that part of the judge's order which suppresses the defendant's statement, made to Officer Keane near the defendant's home, that he was driving the automobile.[1] The Commonwealth contends that this statement, which it deems critical to its case in chief at trial, was properly obtained.

The mandates of *Miranda* apply to motor vehicle violations of the type in issue here. See *Commonwealth* v. *Brennan*, 386 Mass. 772, 775 (1982). See also *Commonwealth* v. *Burke*, 6 Mass. App. Ct. 697 (1978); *Commonwealth* v.

---

[1] The Commonwealth has not pressed either in its brief or in oral argument any challenge to those portions of the judge's order which suppressed the defendant's admission made outside his home that he had been drinking or his later admissions at the police station. We have been advised that the Commonwealth has abandoned any intention of offering this evidence at the trial, choosing instead to rely primarily upon the evidence of the breathalyzer test results to establish the defendant's intoxication. The defendant has briefed and argued the case on the assumption that only his admission of operation is before us. In these circumstances, we do not consider the propriety of the judge's order beyond the defendant's admission that he was driving the automobile. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Commonwealth* v. *Bertrand*, 385 Mass. 356, 358 (1982).

*Doyle,* 12 Mass. App. Ct. 786 (1981). Its application is triggered by "custodial interrogation," i.e. "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona,* 384 U.S. at 444. *Orozco* v. *Texas,* 394 U.S. 324, 327 (1969). *Commonwealth* v. *Haas,* 373 Mass. 545, 551 (1977). There is no requirement that warnings be given prior to "[g]eneral on-the scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." *Miranda* v. *Arizona, supra* at 477. The boundaries of custodial interrogation were sketched in *Oregon* v. *Mathiason,* 429 U.S. 492, 495 (1977), as follows: "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." (Emphasis original.) We have previously explained that "the applicability of *Miranda* to a particular case must be determined after an objective review of all the circumstances, with consideration given to such factors as the nature of the crime, the place where the questioning takes place (*Commonwealth* v. *Haas,* 373 Mass. 545, 552 [1977]), the status of the investigation at the time of the questioning, the conduct of the police toward the defendant, the defendant's reasonable belief as to his freedom of action (*United States* v. *Montos,* 421 F.2d 215, 223 [5th Cir.], cert. denied, 397 U.S. 1022 [1970]), and the ability of the defendant voluntarily to leave

the place of questioning. *Commonwealth* v. *Cruz,* 373 Mass. 676, 683 (1977), and cases cited." *Commonwealth* v. *Doyle,* 12 Mass. App. Ct. at 793.

In the case of a motor vehicle accident the factors enumerated in *Doyle* contemplate that the immediate investigative goal is to determine whether or not a crime has been committed. Questioning the parties involved in an accident is an obvious first step in that process, which often requires "careful and painstaking accident reconstruction . . . before the police can obtain the root facts upon which to base a reasoned decision whether citations should be issued and criminal complaints sought." *Commonwealth* v. *Provost,* 12 Mass. App. Ct. 479, 484 (1981). That the questioning may lead to virtually simultaneous conclusions by the police as to the commission of a crime and as to its perpetrator does not make the interrogation "custodial" in the sense that the term is used in *Miranda.* Parties to an accident thus find themselves in a situation analogous to that of the taxpayer in *Beckwith* v. *United States,* 425 U.S. 341 (1976), who was questioned by Internal Revenue agents about his tax returns in a tax fraud case. Having taken part in activity that indicates the possibility of criminal conduct, the taxpayer becomes the "focus" of an investigation aimed at ascertaining whether any criminal conduct has occurred. During the investigation questions are often asked the answers to which may provide the first grist for the prosecutorial mill, if it is eventually determined that a crime has been committed. In *Beckwith,* however, the Court took pains to note (at 345-347), that while this investigative focus may make the questioning the "starting point" for a prosecution, it does not create the custodial environment which requires Miranda warnings.

Here there were no discernible facts at the scene which would have clearly supported a conclusion of negligent operation. Preliminary investigation indicated that the victim may have contributed to the happening of the accident by crossing against a traffic light. The actual inquiry, however, was limited and routine. To be sure, the defend-

ant's initial absence from the scene and the officer's observation that he appeared intoxicated tended to make the defendant the focal point of the investigation. As noted, however, in *Beckwith, supra,* and *Commonwealth* v. *Valliere,* 366 Mass. 479, 486 (1974), "'[f]ocus' alone does not trigger the need for *Miranda* warnings."[2] The duration of the encounter, although never singly determinative, is more indicative of an ordinary field investigation of an automobile accident than custodial interrogation. See *Commonwealth* v. *Podlaski,* 377 Mass. 339, 343 (1979). Cf. *Borodine* v. *Douzanis,* 592 F.2d 1202, 1208 (1st Cir. 1979). Most important, there were no objective manifestations that the defendant's freedom of action had been curtailed in any significant way. We conclude that the objective features of the encounter, see *United States* v. *Pratt,* 645 F.2d 89, 91 n.1 (1st Cir. 1981), establish noncustodial questioning which need not have been preceded by Miranda warnings. The portion of the order which suppressed the defendant's admission of operation is reversed.

*So ordered.*

---

[2] We note that a charge of leaving the scene of an accident after causing personal injury was not brought. If the defendant had been charged with that offense, a different result might be warranted.