COMMONWEALTH *vs.* JOHN T. ZEVITAS.

Suffolk. March 8, 1994. - September 23, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Required finding, Instructions to jury. *Constitutional Law*, Self-incrimination, Breathalyzer test. *Evidence*, Blood alcohol test, Breathalyzer test. *Motor Vehicle*, Operating under the influence.

At a criminal trial the evidence presented warranted the determination beyond a reasonable doubt that the defendant operated a motor vehicle on a public way negligently and while under the influence of alcohol so as to endanger the lives of the public and that a homicide resulted; the defendant's motions for required findings of not guilty were correctly denied. [680]

At the trial of indictments for vehicular homicide (G. L. c. 90, § 24G), operating to endanger (G. L. c. 90, § 24 [2] [*a*]), and operating under the influence (G. L. c. 90, § 24 [1] [*a*] [1]), in which there was no evidence admitted that the defendant refused to submit to a blood alcohol test, the judge's instructions to the jury, which followed the dictates of G. L. c. 90, § 24 (1) (*e*), and which admonished against speculation and inferences from lack of evidence of a blood alcohol test, violated the defendant's privilege against self-incrimination of art. 12 of the Declaration of Rights of the Massachusetts Constitution. [680-684]

INDICTMENTS found and returned in the Superior Court Department on October 18, 1990.

The cases were tried before *Elbert Tuttle*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Janis M. Berry* (*George F. Gormley & James W. Matthews* with her) for the defendant.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant was charged in four indictments with vehicular homicide by reckless or negligent oper-

ation while under the influence of intoxicating liquor, G. L. c. 90, § 24G (1992 ed.); operating a motor vehicle negligently so as to endanger the lives of the public, G. L. c. 90, § 24 (2) (*a*) (1992 ed.); operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (*a*) (1) (1992 ed.); and operating a motor vehicle recklessly or negligently under the influence of intoxicating liquor so as to endanger and cause serious bodily injury, G. L. c. 90, § 24L (1992 ed.). A jury convicted the defendant of all but the last charge. The defendant then filed a motion pursuant to Mass. R. Crim. P. 25 (b) (2); 398 Mass. 896 (1979), for a required finding of not guilty with respect to each of the offenses of which the jury had found him guilty, and for an order of a finding of a lesser degree of guilt with respect to the vehicular homicide indictment. The several motions were denied. The judge sentenced the defendant to two years in a house of correction with the mandatory minimum of one year to be served and two years of probation on the vehicular homicide (G. L. c. 90, § 24G) conviction. The judge imposed identical sentences on the other offenses, each sentence to run concurrently with the sentence for vehicular homicide.

The defendant appealed from the three convictions. A single justice of the Appeals Court stayed the sentences pending appeal. We transferred the case to this court on our own initiative. The defendant raises numerous issues on appeal. The first issue we shall consider is whether the evidence warranted the three convictions. We conclude that the evidence was sufficient as to each indictment. We shall then consider whether the judge erred by instructing the jury pursuant to G. L. c. 90, § 24 (1) (*e*), concerning the defendant's failure to take a blood alcohol test. We conclude that the instruction, although mandated by the statute, constitutes reversible error requiring a new trial. Our determination that a new trial is required makes it unnecessary for us to consider the other issues raised by this appeal since we cannot confidently say which, if any, of those issues are likely to recur.

We summarize the evidence most favorable to the Commonwealth. At approximately 11:15 P.M. on July 12, 1990, a

motor vehicle operated by Edward Allaire westerly in the right hand lane of the Massachusetts Turnpike suddenly became inoperable while approaching the Allston-Brighton toll booths. The vehicle's hazard lights were then turned on and Allaire and one of the two passengers went to the rear of the vehicle to push it to the toll-gate ramp. There were four westbound travel lanes, no breakdown lane, and overhead lights. The area was well-lit by street lights. The weather was misty. The second passenger steered the vehicle as it was moved to within two feet of the right edge of the road. Allaire was at the left rear of the vehicle pushing it when a vehicle operated by the defendant also in a westerly direction on the turnpike at a speed of forty-five to fifty miles per hour while changing lanes struck Allaire and the rear of Allaire's vehicle, killing Allaire. Allaire's vehicle traveled 109 feet from the point of impact and the defendant's vehicle traveled eighty-two feet. The front of the defendant's vehicle was smashed as was the rear of Allaire's vehicle. At the scene, the defendant repeatedly said that he "didn't see it."

Three State troopers testified that they had observed the defendant at the scene of the accident. Through them evidence was presented that the defendant's breath had a strong odor of alcohol, his eyes were bloodshot and glassy, he was unsteady on his feet and his speech was slurred. Each of two troopers testified that, at the scene, he formed an opinion that the defendant was under the influence of alcohol. All of the above described evidence was introduced during the presentation of the Commonwealth's case.

At the conclusion of the Commonwealth's case, the defendant moved for required findings of not guilty with the exception of the operating to endanger and these motions were denied. The defendant also moved for required findings at the conclusion of all the evidence and after the verdicts were returned, and these motions, too, were denied. There was no error. "Applying the standard set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), we must determine whether the evidence, read in a light most favorable to the Commonwealth, was sufficient to satisfy a

rational trier of fact of each element of the crime beyond a reasonable doubt." *Commonwealth* v. *Toney*, 385 Mass. 575, 582 (1982). "We consider the state of the evidence both at the close of the Commonwealth's case, and at the close of all the evidence." *Commonwealth* v. *Basch*, 386 Mass. 620, 622 (1982). "We consider the evidence at the close of all the evidence to determine whether the Commonwealth's position as to proof had deteriorated since it had closed its case. See *Commonwealth* v. *Amazeen*, 375 Mass. 73, 80 n.5 (1978); *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976)." *Id.* at 622 n.2.

We are satisfied that, on the basis of the evidence presented by the Commonwealth, a rational trier of fact could have determined beyond a reasonable doubt that the defendant operated a motor vehicle on a public way negligently and while under the influence of alcohol so as to endanger the lives of the public, and that Allaire's death resulted. Therefore, the evidence presented before the close of the Commonwealth's case was sufficient to warrant the three convictions. We are also satisfied that the Commonwealth's case did not deteriorate in the sufficiency of the evidence sense after the Commonwealth rested. Although the defendant presented evidence that conflicted with the Commonwealth's evidence, " '[d]eterioration' does not mean a conflict in the evidence which arises in the course of the defendant's case." *Commonwealth* v. *Hastings*, 22 Mass. App. Ct. 930, 931 (1986). The motions for required findings of not guilty were properly denied.

Turning to the issue whether the judge erred by instructing the jury in compliance with G. L. c. 90, § 24 (1) (*e*), we begin by setting out the relevant portions of that statute and the judge's instructions.

Section 24 (1) (*e*) provides in part:

"In any prosecution for a violation of paragraph (*a*) of this subdivision, evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, as shown by chemical test or

analysis of his blood or as indicated by chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor; provided, however, that if such test or analysis was made by or at the direction of a police officer, it was made with the consent of the defendant[ ] . . . Evidence that the defendant failed or refused to consent to such test or analysis shall not be admissible against him in a civil or criminal proceeding, but shall be admissible in any action by the registrar under paragraph (f). When there is no evidence presented at a civil or criminal proceeding of the percentage, by weight, of alcohol in the defendant's blood, the presiding judge at a trial before a jury shall include in his instructions to the jury a statement of an arresting officer's responsibilities upon arrest of a person suspected to be operating a motor vehicle under the influence of alcohol and a statement: that a blood alcohol test may only be administered with a person's consent; that a person has a legal right to take or not take such a test; that there may be a number of reasons why a person would not take such a test; that there may be a number of reasons why such a test was not administered; that there shall be no speculation as to the reason for the absence of a test and no inference can be drawn from the fact that there was no evidence of a blood alcohol test; and that a finding of guilty or not guilty must be based solely on the evidence that was presented in the case."

The judge instructed the jury over the defendant's objection as follows:

"Now, when we talk about operation of a motor vehicle under the influence of an alcoholic beverage, I am required under the law to tell you that when a person is arrested and charged with operating a motor vehicle under the influence of an intoxicating liquor, at the time

of the booking the police may officer [*sic*] the arrested person either a breath test or a blood test in order to measure the level of alcohol in his blood. The police must inform the person that he is not obligated to submit to such a test. If the person consents to take the test, he must be informed of its results on request. If he takes the test, he must also be. given an opportunity to arrange for a second independent breath or blood test to be administered by a physician or other person of his own choosing and at his own expense.

"In this case, no evidence has been offered about any breath test or blood test. I remind you that such a test may be administered only with a person's consent and that a person has a legal right either to take or not to take such a test. In any particular situation, there may be a number of reasons why a person would not take such a test; and there may be a number of reasons why such a test was not administered by the police. You are not to speculate about why there is no evidence of such a test in this case. You are not to draw any inference favorable or unfavorable to either the defendant or the Commonwealth because there is no such evidence. You are to decide whether the defendant is guilty or not guilty based solely on the evidence that has been presented to you in this particular case."

On May 12, 1992, the Justices of this court submitted to the Senate of the Commonwealth an answer to the following question: "Would the provisions of Senate No. 717 which permits a defendant's failure or refusal to submit to a chemical test or analysis of his breath to be admissible as evidence in a criminal proceeding violate the self-incrimination clause of Article XII of Part the First of the Constitution of the Commonwealth in that the defendant is therefore compelled to furnish evidence against himself?" The Justices's answer was, "Yes," "[t]he proposed statute . . . would violate the privilege against self-incrimination of art. 12." *Opinion of*

*the Justices,* 412 Mass. 1201, 1211 (1992). The Justices reasoned that "[i]n the ordinary case a prosecutor would seek to introduce refusal evidence to show, and would argue if permitted, that a defendant's refusal is the equivalent of his statement, 'I have had so much to drink that I know or at least suspect that I am unable to pass the test.' See *Williford v. State,* 653 P.2d 339, 342-343 (Alaska Ct. App. 1982)." *Id.* at 1209. The Justices concluded that refusal evidence constitutes evidence of an accused's thought process and is therefore testimonial in nature. *Id.* The Justices also concluded that, because the proposed statute would compel the accused to choose between taking the breathalyzer test and perhaps produce potentially incriminating real evidence, and refusing to take it "and have adverse testimonial evidence used against him at trial," the proposed statute would unconstitutionally compel an accused to furnish evidence against himself or herself. *Id.* at 1211.

Of course, here, no evidence was admitted that the defendant refused to submit to a blood alcohol test. However, following the dictates of G. L. c. 90, § 24 (1) (*e*), the judge gave jury instructions that tended to have the same effect as the admission of refusal evidence, considered in *Opinion of the Justices, supra,* would have had. The judge told the jury, by strong implication at least, that the defendant's blood alcohol level had not been tested, and that the reason no test was conducted was that the defendant refused to submit to such a procedure. Thus, although the jury received their information directly from the judge rather than from witnesses, the issue in this case for all practical purposes is the same issue that the Justices considered in *Opinion of the Justices, supra,* and the answer is the same, that is, that § 24 (1) (*e*) unconstitutionally compels an accused to furnish evidence against himself or herself.

The Commonwealth stresses that the judge instructed the jury not to speculate about why there was no evidence of a blood alcohol test, and not to draw inferences favorable or unfavorable to the defendant or to the Commonwealth from the lack of such evidence. It is true that the use of appropri-

ate limiting instructions usually renders any error in the introduction of prejudicial evidence harmless, *Commonwealth v. Roberts*, 378 Mass. 116, 127 (1979), because "[w]e presume, as we must, that a jury understands and follows limiting instructions." *Commonwealth v. Jackson*, 384 Mass. 572, 579 (1981). However, here we are not concerned with the question whether erroneously admitted evidence may be rendered harmless by appropriate instructions. Here we are confronted with an erroneous instruction (although legislatively mandated) and we cannot fairly conclude that the judge's admonition against speculation and inferences based on the information he had given the jury dissuaded the jury from concluding that the defendant had refused to submit to a blood alcohol test and using that evidence against him in violation of his art. 12 rights. "Where the prejudicial remarks fall from the judge himself, the effect on the jury is likely to be more damaging [than the erroneous admission of testimony] . . . ." *Commonwealth v. Goulet*, 374 Mass. 404, 414 (1978). See *Commonwealth v. Riveiro*, 393 Mass. 224 (1984) (Jury present at voir dire and exposed to inculpatory evidence which was later excluded. Judge instructed jury to disregard evidence. Convictions of murder in the first degree reversed.) We conclude that the three convictions must be reversed and the case must be returned to the Superior Court for retrial.

*So ordered.*