## COMMONWEALTH *vs.* GAIL C. SEYMOUR.

No. 94-P-1977.

Essex. September 7, 1995. - January 24, 1996.

Present: BROWN, KASS, & GREENBERG, JJ.

*Motor Vehicle*, Operating under the influence. *Constitutional Law*, Self-incrimination, Breathalyzer test, Waiver of constitutional rights. *Evidence*, Breathalyzer test. *Waiver. Practice, Criminal*, Instructions to jury, Cross-examination by prosecutor, Comment by prosecutor.

Where, at the trial of a complaint for operating a motor vehicle while under the influence of alcohol, the prosecutor improperly inquired of the defendant whether she had taken a breathalyzer test and then improperly argued to the jury that the defendant's refusal demonstrated consciousness of guilt, and where the judge failed to give the limiting instruction then required by G. L. c. 90, § 24 (1) (*e*), regarding the absence of evidence of blood alcohol testing, the error was not harmless and the defendant was entitled to a new trial. [673-678]

At a criminal trial, the defendant's statements to a police officer at the scene of a motor vehicle accident were properly admitted where the defendant had initiated the encounter and any questioning by the officer was permissible investigatory conduct and, in the circumstances, noncustodial. [678-680]

At a criminal trial an inquiry of the defendant on cross-examination was not an improper comment on her postarrest silence where its purpose was to demonstrate that an omission from the defendant's postarrest statements was at variance with the defendant's trial testimony. [680]

At a criminal trial the prosecutor exceeded the bounds of proper argument by improperly commenting on the defendant's alleged failure to cooperate with police, i.e., silence. [680-681]

COMPLAINT received and sworn to in the Newburyport Division of the District Court Department on July 1, 1993.

The case was tried before *Richard A. Mori*, J.

*Ruth Greenberg* for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant appeals from her conviction of driving while under the influence of intoxicating liquor, claiming that her privilege against self-incrimination and the provision of G. L. c. 90, § 24(1) (*e*), making evidence of failure to submit to a breathalyzer test inadmissible at trial, were violated when the trial judge permitted the prosecutor to ask her on cross-examination whether she had refused to take a breathalyzer test. This error was compounded, the defendant contends, when the prosecutor, during her closing speech, argued that the defendant's refusal to submit to a breathalyzer test constituted consciousness of guilt. In addition, the defendant argues that her rights were further violated when the prosecutor cross-examined her regarding her failure to talk to, or cooperate with, the police.

We state only such facts as are necessary to assess the legal arguments made on appeal. On direct examination the defendant testified that a police officer repeatedly asked her if she wanted to take a breathalyzer test.[1] The prosecutor, on cross-examination, asked the defendant whether she had taken the breathalyzer test. After the judge overruled the objection, the defendant responded that she had not taken the test. The prosecutor then, without objection from defense counsel, asked the defendant what her reasons were for not taking the test. The defendant stated that she had called her father and he had advised her not to do so because "he could see a frame-up going on." The trial judge allowed the prosecutor's motion to strike the latter part of the defendant's answer, i.e., the reference to a "frame-up." In her closing argument the prosecutor made particular reference to the defendant's refusal to take a breathalyzer test, arguing that the reason the defendant refused to take the test was because she knew she had been drinking too much. Defense counsel did not object to the closing, nor did he request a limiting instruction as to the use of the breathalyzer testimony.

There were at least two serious errors in the defendant's trial: First, the prosecutor inquired of the defendant whether

---

[1] The defendant had filed a "motion in limine to exclude any reference to refusal of field tests of the defendant," and the motion had been allowed.

she had "taken a breathalyzer test" and referred in her closing speech to the defendant's refusal to take such a test. Secondly, the judge failed to give the limiting instruction concerning the absence of blood alcohol evidence thought to be required by G. L. c. 90, § 24(1) (e), at the time of this trial but subsequently held unconstitutional in *Commonwealth* v. *Zevitas*, 418 Mass. 677, 683 (1994).[2] Contrary to the Commonwealth's assertion, two wrongs do not make a right. Thus, in the peculiar circumstances of this case, we are constrained to reverse and order a new trial. See, e.g., *Commonwealth* v. *D'Agostino*, 38 Mass. App. Ct. 206, 210, *S.C.*, 421 Mass. 281, 287-288 (1995).

Although the defendant, by testifying that a police officer had repeatedly asked her if she wanted to take a breathalyzer test, was the first to mention the test, that did not grant a license to the Commonwealth to inquire further and ask whether she had refused to submit to the test. Such an inquiry was impermissible, even prior to *Commonwealth* v. *Zevitas*, 418 Mass. at 683, which made explicit that admission of evidence of an accused's refusal to submit to a breathalyzer test would violate the privilege against self-incrimination contained in art. 12 of the Massachusetts Declaration of Rights. See *Opinion of the Justices*, 412 Mass. 1201, 1211 (1992), which stated that a proposed statutory provision to make admissible evidence of refusal to take such a test would violate the privilege against self-incrimination.

The Commonwealth argues that the defendant waived her statutory and constitutional right not to have refusal evidence admitted by voluntarily testifying on direct examination that a police officer had repeatedly asked her if she wanted to take a breathalyzer test. The Commonwealth bases its argument on the doctrine of "waiver by testimony."[3] Under this doctrine, "if an *ordinary witness, not a party to a*

_____

[2]See recent trilogy, *Commonwealth* v. *D'Agostino*, 421 Mass. 281 (1995), *Commonwealth* v. *Adams*, 421 Mass. 289 (1995), and *Commonwealth* v. *Koney*, 421 Mass. 295 (1995).

[3]The Commonwealth, in its brief, refers to this doctrine as "waiver by partial disclosure."

*cause*, voluntarily testifies to a fact of an *incriminating nature* [she] waives [her] privilege as to subsequent questions seeking related facts" (emphases supplied). *Taylor* v. *Commonwealth*, 369 Mass. 183, 189 (1975). Thus, contrary to the Commonwealth's contention, the "waiver by testimony" doctrine is inapposite to this case.

A different waiver analysis applies when a defendant takes the stand in a criminal proceeding. "When a defendant in a criminal case voluntarily takes the stand he waives his privilege against self-incrimination to the extent that he renders himself liable to cross-examination on all facts relevant and material to the crime with which he is charged." *Jones* v. *Commonwealth*, 327 Mass. 491, 493 (1951). See *Commonwealth* v. *Nichols*, 114 Mass. 285, 287 (1873). A defendant who takes the stand in her own behalf, however, does not waive her privilege with respect to matters that are not pertinent to the issue or are improper for purposes of impeachment. See *Commonwealth* v. *Johnson*, 175 Mass. 152, 153 (1900); Hughes, Evidence § 143, at 130-131 (1961). Therefore, although a defendant, in electing to testify in her own behalf, opens herself up to cross-examination on a variety of matters, that cross-examination is not without limits.[4]

To determine whether the defendant waived her right not to have refusal evidence admitted, it is necessary to view this case in light of the then existing law. The defendant was convicted on May 4, 1994, approximately four months prior to the Supreme Judicial Court's decision in *Commonwealth* v. *Zevitas*, 418 Mass. at 683, which held that the jury instruction mandated by G. L. c. 90, § 24(1) (*e*), violates art. 12 of the Massachusetts Declaration of Rights. Section 24(1) (*e*), in relevant part (as appearing in St. 1986, c. 620, § 11), provides:

> "When there is no evidence presented at a . . . criminal proceeding of the percentage, by weight, of alcohol in

---

[4] The Commonwealth acknowledges that the prosecutor would not have been permitted to question the defendant regarding the breathalyzer test simply because the defendant elected to testify.

the defendant's blood, the presiding judge at a trial before a jury *shall* include in his instructions to the jury a statement of an arresting officer's responsibilities upon arrest of a person suspected to be operating a motor vehicle under the influence of alcohol and a statement: that a blood alcohol test may only be administered with a person's consent; that a person has a legal right to take or not take such a test; that there may be a number of reasons why a person would not take such a test; that there may be a number of reasons why such a test was not administered; that there shall be no speculation as to the reason for the absence of a test and no inference can be drawn from the fact that there was no evidence of a blood alcohol test; and that a finding of guilty or not guilty must be based solely on the evidence that was presented in the case . . ." (emphasis supplied).

Thus, prior to *Zevitas,* in cases where no blood alcohol tests had been put in evidence, judges were required to instruct jurors as to the responsibilities of police officers in "operating under the influence" cases. A statement of the arresting officer's responsibilities presumably would include an instruction that it is customary for police officers to ask persons accused of driving under the influence to submit to some sort of blood alcohol test. Thus, even though a jury might not have heard evidence of refusal to submit to a test, they might have inferred such a refusal from the judge's instructions. However, the jury would also have been instructed that there might be a number of reasons why such a test was not taken and that no inference may be drawn from that fact.[5] This was the state òf the law at the time of the defendant's trial.

Even though the statute required the judge to instruct on the issue, it would have been impermissible for one of the police officers to testify that the defendant had been offered a

---

[5]The Commonwealth argues that the instruction was not required in this case because (a) the defendant did not request that it be given and (b) there was some testimony regarding the breathalyzer examination.

breathalyzer test. *Commonwealth* v. *Conroy*, 396 Mass. 266, 268 (1985).[6]

In light of the then required jury instruction, the defendant did not by testifying that she had been offered the test waive her privilege against self-incrimination. Although one could question the wisdom of bringing up the breathalyzer test on direct examination, the fact remains that the jury would have learned in any event, that she had been offered a breathalyzer test, as a result of the jury instruction then required under § 24(1) (*e*). Yet that statute also made inadmissible evidence of a failure or refusal to take such a test. We conclude that it was improper for the trial judge to admit evidence of the defendant's refusal to submit to the breathalyzer test. The error was not harmless beyond a reasonable doubt. See *Commonwealth* v. *McGrail*, 419 Mass. 774, 780 (1995).[7]

The defendant argues that her privilege against self-incrimination was further violated when the prosecutor

---

[6]In *Conroy*, a police officer testified on direct examination that the defendant had been offered the opportunity to take a breathalyzer test. No further mention was made of the breathalyzer test at trial. The defendant argued that the police officer's testimony constituted indirect evidence of the defendant's refusal and, as such, was prohibited by G. L. c. 90, § 24(1)(*e*). The defendant also argued that, in the absence of additional evidence regarding the results of the breathalyzer test or circumstances preventing administration of the test, the jury would have reached the inescapable conclusion that the defendant had refused to take the test. *Id.* at 267. The court, in accepting the defendant's argument, held that the evidence should have been excluded, but found the error in the circumstances of that case not so prejudicial as to require reversal. *Id.* at 268-269.

It is difficult, however, to reconcile the court's holding in *Conroy* with the then required instruction under G. L. c. 90, § 24(1)(*e*). *Conroy* was decided prior to the court's holding in *Zevitas*. Therefore, there appears to have been a time in which the mandate of § 24(1)(*e*) was in direct contradiction to the court's holding in *Conroy*: whereas police officers were barred from mentioning that a defendant had been provided an opportunity to take a breathalyzer test, judges, in some cases, were obliged to do so.

[7]Moreover, had the then required instruction been given, the jury would also have been instructed that there may be a number of reasons why a person would not take such a test or why such a test would not be administered and that no inference could be drawn from the fact that no such test was taken.

stated during closing argument that the defendant's refusal to take the breathalyzer test was motivated by consciousness of guilt.[8] We agree that the prosecutor's closing argument was improper, both as an infringement of her privilege against self-incrimination and as contrary to § 24(1) (e) (see note 7 supra).

We now touch upon several claims of error that may arise on retrial. The defendant argues that her privileges against self-incrimination under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights were violated when the prosecutor was permitted to ask the defendant questions that, the defendant contends, referred to her postarrest silence. The defendant takes issue with two lines of questioning. We address them seriatim.

(1) The defendant was asked on cross-examination by the prosecutor whether she was somewhat unresponsive when the police officer told her that he smelled a strong odor of alcohol. The defendant contends that this question sought a response relating to the defendant's postarrest silence and that the prosecutor, in so inquiring, violated the defendant's privilege against self-incrimination. "[E]vidence of a criminal defendant's postarrest, post-Miranda silence cannot be used for the substantive purpose of permitting an inference of guilt . . . ." Commonwealth v. Mahdi, 388 Mass. 679, 694 (1983). The essential inquiry here is whether the questioning of the defendant constituted a custodial interrogation.

In determining whether an interrogation is custodial in nature, consideration is given to such factors as (a) the nature of the crime; (b) the status of the investigation at the time of questioning; (c) the conduct of the police toward the defendant; (d) the defendant's reasonable belief as to his freedom of action; and (e) the ability of the defendant to leave volunta-

---

[8]The prosecutor argued the following: "[The defendant] knew not to take the test, because she knew she had been drinking too much that night, that her ability to operate her motor vehicle safely had been impaired by what she had had to drink, and she knew and she did not take the breathalyzer test."

rily the place of questioning. *Commonwealth v. Merritt*, 14 Mass. App. Ct. 601, 604-605 (1982).

Here, Officer Champagne testified that, while he was directing traffic, the defendant approached him and commented on the cause of an accident.[9] According to the officer the defendant was "very excited, glassy-eyed, and kind of crude and agressive." Officer Champagne asked the defendant what she had been drinking. At first, the defendant stated that she did not drink and drive. The officer told the defendant that he could smell alcohol on her, and once again asked the defendant what she had been drinking. The defendant then responded that she had been drinking champagne on the beach. The officer talked with the defendant a few minutes more, after which he informed the defendant that she was under arrest for operating while under the influence.

Given these facts, it does not appear that the officer's questioning of the defendant constituted a custodial interrogation. His questioning of the defendant constituted permissible investigatory conduct at an accident scene. See *Commonwealth v. Smith*, 35 Mass. App. Ct. 655, 657-658 (1993), citing *Commonwealth v. Merritt*, 14 Mass. App. Ct. at 604. Although the officer's observation that the defendant smelled of alcohol tended to make the defendant the focal point of the investigation, that alone does not transform the encounter into a custodial interrogation.[10] See *Commonwealth v. Merritt*, 14 Mass. App. Ct. at 606. Moreover, the defendant was the one who initiated the encounter. See *Commonwealth v.*

---

[9]There appears to be an inconsistency between Officer Champagne's testimony and Officer May's testimony. Officer May testified that Officer Champagne arrived minutes after Officer May had spoken with defendant. He then testified to the following: "I observed Officer Champagne go to the defendant. I observed him go to the defendant's car. I observed him reach into the car and take out a loaded .38 revolver. I observed him empty the revolver, put it in a secure area in the cruiser, and then I observed him give [the defendant] her rights and then escort her to the cruiser and place her in the back seat, handcuffed."

[10]Nor does the fact that another officer told the defendant not to leave the scene. See *Commonwealth v. McNelley*, 28 Mass. App. Ct. 985, 986 (1990).

*Downs*, 31 Mass. App. Ct. 467, 471 (1991) (that the defendant initiated conversation with the police was considered in determining the nature of the encounter). These factors demonstrate that this was not a custodial interrogation.

(2) The other challenged question was, "You never mentioned to anyone at the scene, including the two officers who were asking you questions about drinking and that sort of thing, you never mentioned to them anything about having a problem with your car, did you?" This question, albeit inartfully phrased, is unlike the preceding question, as it appears to relate to the defendant's postarrest silence. This line of questioning suggests that the defendant, having been told that she was under arrest, had an obligation to disclose all information relevant to the accident.

The Commonwealth argues that the question was proper because it pertained to the defendant's testimony on direct examination that she had told Officer May at the scene of the accident that the car was "undriveable." In light of the defendant's testimony, the prosecutor's question was permissible, see and compare *Commonwealth* v. *Martinez*, 34 Mass. App. Ct. 131, 132 (1993); its purpose was to alert the jury to possible "flaws or inconsistencies in the defendant's trial testimony." *Ibid.* See *Commonwealth* v. *McClary*, 33 Mass. App. Ct. 678, 685-686 (1992) ("prosecutor may ask the defendant about any *omission* from [her] post-Miranda statement which is at variance with [her] trial testimony" [emphasis original]).

The defendant challenges two statements made by the prosecutor during closing argument.[11] Both statements pertain to the defendant's failure to cooperate with the police. The prosecutor made the following statements in closing argument:

"She went up to Officer May and instead of cooperating with the officer and talking, as she said she did, the evi-

---

[11] In passing, we note that the prosecutor's closing speech in some respects "sailed unnecessarily close to the wind" (*Commonwealth* v. *Redmond*, 370 Mass. 591, 597 [1976]) and in other respects "exceeded the bounds of proper argument" (*Commonwealth* v. *Dowdy*, 36 Mass. App. Ct. 495, 503 [1994] [Brown, J., dissenting]).

dence shows from the people that were there and that had not been drinking that she did have a conversation and she was yelling at that officer."

"And she gets within a couple of feet of him [presumably Officer Champagne] and he says, have you been drinking. He has to ask her a couple of times. She's a police officer, or at least was until 1989. She knew she's supposed to answer what the police officer asks her, to try and cooperate."

The Commonwealth contends that those portions of the argument "pertained to non-custodial, pre-arrest statements" and therefore neither the Fifth Amendment nor art. 12 was implicated. The latter statement, however, exceeded the bounds of proper argument, as it improperly called into question the defendant's silence. See *Comonwealth* v. *Martinez*, 34 Mass. App. Ct. at 132-133.

Finally, we urge that on retrial the Commonwealth admonish its witnesses to avoid scrupulously any reference to the breathalyzer test and the defendant's attitude relative to taking such a test.

*Judgment reversed.*
*Verdict set aside.*