NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12257


COMMONWEALTH  vs.  MICHAEL J. WOLFE.



Middlesex.     May 2, 2017. - October 13, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd,
& Cypher, JJ.[1]


Motor Vehicle, Operating under the influence.  Practice,
     Criminal, Instructions to jury.  Constitutional Law, Self-
     incrimination, Breathalyzer test.  Evidence, Breathalyzer
     test, Field sobriety test.




     Complaint received and sworn to in the Marlborough Division
of the District Court Department on February 13, 2015.

     The case was tried before Michael L. Fabbri, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Luke Rosseel for the defendant.
     Thomas D. Ralph, Assistant District Attorney, for the
Commonwealth.
     Jeffrey J. Pokorak, Natalia Smychkovich, & Houston
Armstrong, for Suffolk Defenders Program of Suffolk University
Law School & others, amici curiae, submitted a brief.

---

     [1] Justice Hines participated in the deliberation on this
case prior to her retirement.

BUDD, J. We are asked to decide whether, in a jury trial of an operating a motor vehicle while under the influence (OUI) case, a trial judge may properly give a jury instruction that specifically mentions the absence of breathalyzer or other alcohol-test evidence. We conclude that the judge should not give such an instruction unless the defendant requests it.[2]

In this case, the jury were instructed about the absence of alcohol-test evidence in the judge's final instructions over the defendant's objection. We conclude that giving the objected-to charge constituted error and that, in the circumstances of this case, the error was prejudicial. Accordingly, we vacate the defendant's conviction and remand for a new trial.[3]

Background. The defendant was charged by complaint with one count of OUI, G. L. c. 90, § 24 (1) (a) (1), and twice faced trial on this complaint before a jury in the Marlborough Division of the District Court Department. The first, in January, 2016, ended in a mistrial. The second, in March, 2016, resulted in a conviction. We summarize the facts as the jury

---

[2] It is possible that a rare case could justify giving such an instruction over a defendant's objection, but we have trouble imagining such a scenario.

[3] We acknowledge the amicus brief of the Suffolk Defenders Program of Suffolk University Law School, the Committee for Public Counsel Services, and the Massachusetts Association of Criminal Defense Lawyers.

could have found them at the second trial,[4] reserving additional details for later discussion.

On February 13, 2015, at around 2 A.M., a Marlborough police officer patrolling the Main Street area noticed a Ford Explorer being driven with a broken taillight. The officer followed the vehicle for approximately five to ten minutes. During that time, the officer witnessed the vehicle cross the double yellow line in a "jerking motion" to avoid hitting a snow bank, and later saw the vehicle cross the double yellow line again while executing a turn.

The officer then stopped the vehicle at the intersection of Union Street and Stevens Street. Upon approaching the vehicle, the officer observed the defendant in the driver's seat with "bloodshot glassy eyes, slurred speech and a distinct odor of alcohol coming from his breath when he spoke." The defendant initially told the officer he was coming from a sandwich shop on Main Street. When the officer replied that the shop closed much earlier in the evening, the defendant admitted that he had been at a nightclub where he had consumed "a few" drinks. The defendant gave "delayed" responses to several of the officer's questions.

The officer then asked the defendant to step out of the

--------

[4] The evidence at the two trials was essentially the same.

vehicle and walk back to the officer's patrol vehicle. During this walk, the defendant used his own vehicle "for balance." Another officer at the scene testified that the defendant was "swaying" and "unsteady on his feet." The defendant was placed under arrest and transported to the Marlborough police station for booking.

At the station, the defendant "immediately" fell asleep in a holding cell. During the booking procedure, the officer again noticed the smell of alcohol on the defendant's breath and had to repeat questions multiple times before the defendant responded. At one point, the defendant was permitted to use his cellular telephone, but instead he sat "just staring" at his telephone and said that it would not turn on. The officer allowed the defendant to use the station's telephone, and explained to the defendant how to dial an outside number. The defendant appeared unable to understand this, so the officer dialed the number for him.

There was no mention in the trial evidence of the lack of a breathalyzer test or other alcohol-test evidence. Nevertheless, the judge instructed the jury, over the defendant's objection, not to consider the absence of breathalyzer tests, field sobriety tests, or blood tests.[5] The judge explained that he

---

[5] The full instruction was as follows:

believed this instruction was warranted, in part, because the jury in the first trial had asked a question about the absence of breathalyzer evidence before failing to reach a verdict.

At the second trial, the jury found the defendant guilty. The defendant filed a timely notice of appeal, and we allowed his application for direct appellate review.

Discussion. Primarily, the defendant claims that the trial judge erred by instructing the jury, over objection, that they should disregard the lack of evidence of a breathalyzer test, blood test, or field sobriety test.[6] Generally, trial judges have "considerable discretion in framing jury instructions." Commonwealth v. Kelly, 470 Mass. 682, 688 (2015). However, when, as here, a defendant raises a timely objection to an instruction, we review for prejudicial error, conducting a two-

---

"Now, you may have noticed that there was no evidence of any breath test, blood test, or field sobriety test introduced in this case. You are not to mention or consider in any way whatsoever during your deliberations either for or against either side that there was no such evidence introduced in this case. Do not consider it in any way at all. Do not mention it at all during your deliberations. Put it completely out of your minds."

[6] The defendant also claims error in certain statements the prosecutor made during his closing argument. Because our resolution of the jury instruction issue requires a new trial, we do not reach the closing argument claim. However, to the extent it is helpful at retrial, we note that there appeared to be scant, if any, evidentiary support for the prosecutor's statement that "the booking station was filled with the odor of alcohol" due to the defendant's presence.

part test that asks (1) whether the instruction was legally erroneous, and, if so, (2) whether that error was prejudicial. Id. at 687-688, and cases cited.

The challenged instruction was a modified version of an instruction upheld in Commonwealth v. Downs, 53 Mass. App. Ct. 195, 198 (2001).[7]  In Downs, the Appeals Court distinguished Opinion of the Justices, 412 Mass. 1201 (1992), and Commonwealth v. Zevitas, 418 Mass. 677 (1994), in both of which this court held that reference to possible reasons for the absence of breathalyzer evidence violated a defendant's right against self-incrimination under art. 12 of the Massachusetts Declaration of Rights.  See Downs, supra at 199.

In Opinion of the Justices, 412 Mass. at 1202, this court was asked to opine on the constitutionality of a Senate bill proposing the admission of evidence in a criminal proceeding of a defendant's refusal to submit to a chemical test or breathalyzer.  The court determined that admitting such evidence would violate art. 12, as it would be tantamount to providing

_____

[7] The specific instruction at issue in Downs was as follows:

"You are not to mention or consider in anyway whatsoever, either for or against either side, that there is no evidence of a breathalyzer.  Do not consider that in any way.  Do not mention it.  And put it completely out of your mind."

Commonwealth v. Downs, 53 Mass. App. Ct. 195, 198 (2001).

the jury with the defendant's self-incriminating evidence, i.e., that he refused to submit to testing because he believed it would show he had too much to drink. Id. at 1209, 1211.

In Zevitas, 418 Mass. at 681-682, the defendant challenged a jury instruction stating, in part, that "a person has a legal right either to take or not to take" a breathalyzer test, and that "[i]n any particular situation, there may be a number of reasons why a person would not take such a test; and there may be a number of reasons why such a test was not administered by the police." The court held that such an instruction, although at the time mandated by statute,[8] violated the defendant's art. 12 rights insofar as it invited speculation that the defendant failed to take a breathalyzer because he feared the results would be unfavorable. Id. at 683-684.

In Downs, 53 Mass. App. Ct. at 199-200, the Appeals Court reasoned that, because the instruction at issue made "no mention either of a defendant's legal right to refuse to take the

---

[8] See G. L. c. 90, § 24 (1) (e), as amended through St. 1994, c. 25, § 5 ("When there is no [alcohol-test] evidence presented at a civil or criminal proceeding . . . the presiding judge at a trial before a jury shall include in his instructions to the jury . . . that a person has a legal right to take or not take such a test; that there may be a number of reasons why a person would or would not take such a test; that there may be a number of reasons why such test was not administered; that there shall be no speculation as to the reason for the absence of the test and no inference can be drawn from the fact that there was no evidence of a blood alcohol test . . ."). See also St. 2003, c. 28, § 3 (striking out above language).

breathalyzer or the possible reasons for any refusal," it avoided the art. 12 obstacles identified in Opinion of the Justices and Zevitas.

The defendant disagrees with that logic and asks us to reject the reasoning of Downs. He argues, in effect, that all so-called Downs instructions suffer from the same art. 12 defect found in Opinion of the Justices and Zevitas. The Commonwealth, on the other hand, urges us to embrace the distinction articulated in Downs and hold that a Downs instruction adequately protects both the Commonwealth and defendants against jury speculation without inappropriately implicating a defendant's art. 12 rights.

These arguments boil down to competing claims about who is most at risk of being harmed if the jury fail to follow instructions. In this way, both arguments diverge from a long tradition of appellate courts presuming that juries can and will follow a judge's instructions. See, e.g., Commonwealth v. Andrade, 468 Mass. 543, 549 (2014); Commonwealth v. Cline, 213 Mass. 225, 227 (1913). The Commonwealth's argument assumes that a breathalyzer-specific instruction is necessary because, without it, the jury will speculate about the absence of breathalyzer evidence, contrary to the judge's more general directive to base their verdict solely on the evidence. See Instruction 2.120 of the Criminal Model Jury Instructions for

Use in the District Court (2016) ("You are not to decide this case based on what you may have read or heard outside of this courtroom. You are not to engage in any guesswork about any unanswered questions that remain in your mind, or to speculate about what the 'real' facts might or might not have been"). The Downs case itself makes a similar assumption. See Downs, 53 Mass. App. Ct. at 199 ("without some form of a limiting instruction concerning the breathalyzer, a jury very well could rely upon their common knowledge and engage in the same speculation invited by the erroneous instruction [rejected in Zevitas]").

Similarly, the defendant claims that giving a Downs instruction unnecessarily introduces the specter of refusal evidence into the jury room and will have the opposite of the intended effect, that is, it will cause the jury specifically to focus on the absence of breathalyzer evidence. And, indeed, our decision in Zevitas, 418 Mass. at 684, was structured around our assessment of the risk that juries may not always hew to a judge's instructions to refrain from speculating about matters not in evidence.

We have encountered a variation of this problem before, when asked to decide whether (and, if so, when) a judge should instruct a jury about a defendant's choice not to testify at trial. See Commonwealth v. Rivera, 441 Mass. 358, 370-371

(2004); Commonwealth v. Buiel, 391 Mass. 744, 746-747 (1984).

In Buiel, supra at 746, we remarked that it is "difficult to determine" whether an instruction about the defendant's election not to testify "is beneficial to a particular defendant or to defendants as a group." On the one hand, such an instruction "warns the jury against drawing inferences adverse to the defendant from his not testifying." Id. at 746-747. On the other, it "may focus the jury's attention on the question why the defendant decided not to assist the jury in their fact-finding function."[9] Id. at 747. In light of that difficulty, we announced the prospective and "not constitutionally based" rule that it would be "reversible error if a judge instructs the jury concerning a defendant's right not to testify when the defendant has requested that no such instruction be given." Id. at 746, 747.

In Rivera, we reconsidered the rigidity of this rule, but not its basic thrust. We said that it would no longer be "per

---

[9] As the amici point out, this notion draws strong support from common sense and experience. See F.M. Dostoevsky, Winter Notes on Summer Impressions 112 (R.L. Renfield trans., 1955) ("Try this experiment on yourself: try not to think of a polar bear and you will see that the cursed animal keeps returning to your mind"). Psychologists refer to this phenomenon as "ironic" mental processing and posit that an instruction not to think about something can trigger a mental monitoring process to guard against the forbidden thought; this monitoring process, in turn, may increase the frequency and power of the forbidden thought. See Lieberman & Arndt, Understanding the Limits of Limiting Instructions, 6 Psych., Pub. Pol'y & L. 677, 697-700 (2000).

se reversible error" for a judge to give an instruction about the defendant not testifying, but that the instruction, when objected to, would be subject to review for prejudicial error. Rivera, 441 Mass. at 370-371 & n.9. Nevertheless, "[w]e remain[ed] of the view that judges should not give the instruction when asked not to do so." Id. at 371 n.9.

We believe that similar logic applies here and compels a similar conclusion with respect to an objected-to instruction about the lack of alcohol-test evidence in an OUI case. The challenge here, as in Buiel and Rivera, is rooted in the defendant's art. 12 protection against self-incrimination. Although a Downs instruction does not implicate a defendant's self-incrimination rights as directly as an instruction about a defendant's choice not to testify, it evokes similar concerns. See Zevitas, 418 Mass. at 683-684; Downs, 53 Mass. App. Ct. at 199-200. Also, as in Buiel, 391 Mass. at 746, we find it difficult to assess whether a Downs-type instruction "is beneficial to a particular defendant or to defendants as a group." Doing so would require us to engage in a series of generalizations about defendants in OUI cases, make assumptions about whether and when juries are able to follow a judge's instructions, and speculate ourselves about where the jury's speculation may lead -- all without the benefit of any supporting empirical evidence. The same basic problems are

inherent in assessing the Commonwealth's claim that it, too, may be harmed by the lack of a Downs instruction.[10]

We are persuaded instead that the simpler and safer approach is to leave such an instruction to the defendant's choice.  This approach has the benefit of simplicity because it reaffirms our traditional presumption that the jury will heed the judge's general instruction not to speculate about evidence

---

[10] Along these lines, we agree with the dissent that a trial, at its core, is a search for the truth.  See post at    .  But we have a difference of opinion as to how to best achieve that goal.  The dissent believes that giving a jury instruction that specifically mentions the absence of breathalyzer evidence is necessary to ensure that the jury, in fact, do not consider a missing breathalyzer test.  See id. at    .  As discussed below, we do not agree that such an instruction is necessary to stave off speculation by the jury.  Even so, we acknowledge that such an instruction very well may be effective.  However, there is another possibility:  that such a targeted instruction introduces the idea of missing breathalyzer evidence into the jury room, and, as a result, prompts the jury to wonder about the missing breathalyzer evidence and do the opposite of what they have been instructed to do.  See note 9, supra, and accompanying text.  Because this latter path risks encroaching upon a defendant's constitutional right not to incriminate himself or herself, we believe the decision whether the jury receive such an instruction should rest with the defendant, not the Commonwealth or the court.  See Commonwealth v. Buiel, 391 Mass. 744, 747 (1984).

To borrow the dissent's metaphor, we do not disagree that the jury might find an "oar," in the form of a more specific jury instruction, helpful in navigating the legal waters of an OUI case.  Post at note 1.  But we do not think it wise to present the jury with such a device in a case like this, where, for the reasons discussed in the text, the jury may use it so readily to paddle into restricted waters -- i.e., a defendant's art. 12 rights -- at least not without the defendant's consent, as in Buiel, 391 Mass. at 747, and Commonwealth v. Rivera, 441 Mass. 358, 371 n.9 (2004).

not before them.  By adhering to that presumption from the outset, the need for the breathalyzer-specific instruction approved of in Downs dissipates.[11]

We also agree with the defendant that in Opinion of the Justices and Zevitas we have suggested a tendency to err on the side of caution when it comes to encroaching upon a defendant's constitutional right not to incriminate himself or herself.  In those cases, we expressed concern that the introduction of refusal evidence (Opinion of the Justices) or instructions highlighting, however indirectly, the possibility of refusal (Zevitas) would nudge the jury toward using refusal evidence against a defendant in violation of his or her art. 12 rights.  See Zevitas, 418 Mass. at 684; Opinion of the Justices, 412 Mass. at 1211.  Although this risk may be relatively low, its potential consequences are quite serious.  See Commonwealth v.

_____

[11] The dissent does not adequately explain why, if it is presumed that the jury follow the judge's instructions, there is any need for a Downs instruction in the first place.  If we presume the jury follow the judge's instructions, that presumption should apply equally to the judge's general instruction not to speculate about matters not in evidence.  This would protect both the Commonwealth and the defendant from speculation about the absence of breathalyzer evidence without creating the possibility of inducing speculation by specifically mentioning the absence of breathalyzer evidence.  To the extent the dissent is concerned about jurors speculating based on their collective knowledge, from outside the court room, about breathalyzer testing, we have rejected a similar supposition when called upon to examine the need, or lack thereof, for so-called "CSI" instructions.  See Commonwealth v. Vuthy Seng, 456 Mass. 490, 503-504 (2010).

<u>Sneed</u>, 376 Mass. 867, 871 (1978) ("Even an unintended suggestion that might induce the jury to draw an unfavorable inference [based on defendant's right not to incriminate himself] is error").  And, of course, leading the jury down an inappropriate path is precisely the opposite of what jury instructions are supposed to do.  Cf. <u>King</u> v. <u>Trustees of Boston Univ</u>., 420 Mass. 52, 64 (1995), quoting <u>Pfeiffer</u> v. <u>Salas</u>, 360 Mass. 93, 100-101 (1971) (jury instructions "should be full, fair and clear as to the issues to be decided by the jury, the rules to be followed by the jury in deciding the facts, and the law they are to apply to the facts found").

Accordingly, we conclude that typically a defendant should be able to elect whether the jury are instructed about the absence of alcohol-test evidence.  See <u>Buiel</u>, 391 Mass. at 746-747.  We emphasize that this conclusion, although rooted in constitutional concerns, is not a new constitutional rule requiring retroactive application.[12]  See <u>Rivera</u>, 441 Mass. at 370; <u>Buiel</u>, <u>supra</u> at 747.  Rather, as an exercise of our superintendence power, we conclude that, as a matter of

_____

[12] Although <u>Commonwealth</u> v. <u>Zevitas</u>, 418 Mass. 677 (1994), announced a constitutionally based rule requiring retroactive application, see <u>Commonwealth</u> v. <u>D'Agostino</u>, 421 Mass. 281, 286-287 (1995), this case is distinguishable because the challenged instruction here, unlike in <u>Zevitas</u>, <u>supra</u> at 682, does not specifically mention the possibility of refusing a breathalyzer test.  We reiterate that our decision today is procedural only and has only prospective application.

procedure, the better practice is for a judge to refrain from giving a Downs-type instruction absent a request by the defendant or some rare set of facts that specifically directs the jury's attention to the absence of alcohol-test evidence.[13] Cf. Commonwealth v. DiGiambattista, 442 Mass. 423, 444-445, 447–448 (2004) (using superintendence power to regulate presentation of evidence at trial in requiring, under certain circumstances, jury instructions regarding defendant's unrecorded statement to police).

In this case, the instruction regarding alcohol-test evidence was given over the defendant's objection. Based on our analysis today, this was error.[14] Because the defendant objected at trial and argued for this rule on direct appeal, he should have the benefit of this decision, which otherwise shall apply only prospectively. See Commonwealth v. Adjutant, 443 Mass. 649, 667 (2005). Accordingly, we review for prejudicial error.

---

[13] Further, when a jury ask a question about the absence of alcohol-test evidence, as occurred in the defendant's first trial, we think it is the better practice to simply reiterate the general instruction not to speculate about matters not in evidence and, to the extent possible, refrain from reinforcing the jury's focus on items not in evidence by mentioning the lack of alcohol-test evidence.

[14] We understand why the trial judge in the defendant's second trial chose to give the instruction that he did, given the Appeals Court's ruling in Downs. However, in light of our decision today, which differs from that of the Appeals Court in Downs, the instruction constituted legal error.

Commonwealth v. Allen, 474 Mass. 162, 168 (2016). This means that we "inquire[] whether there is a reasonable possibility that the error might have contributed to the jury's verdict." Commonwealth v. Alphas, 430 Mass. 8, 23 (1999) (Greaney, J., concurring). "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect.'" Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

Here, the evidence of impaired operation was far from overwhelming. For example, the defendant offered a plausible explanation that his first crossing of the double yellow line was necessary to avoid hitting a snow bank in the roadway, and that the second was a relatively brief and minor infraction in the course of making a left-hand turn. He also plausibly suggested that, as he walked back to the arresting officer's cruiser, he used his own vehicle to steady himself not because he was impaired, but as a caution against ice on a cold February night. Moreover, the erroneous remarks at issue here "f[e]ll from the judge himself," and thereby likely had a more damaging effect on the jury. See Zevitas, 418 Mass. at 684, quoting Commonwealth v. Goulet, 374 Mass. 404, 414 (1978). Under these circumstances, we cannot fairly say that "the jury would have inevitably reached the same result if the judge had omitted the challenged instruction." Buiel, 391 Mass. at 747.

Conclusion.  For the reasons discussed, the defendant's conviction is vacated and the case is remanded for a new trial.

So ordered.

LOWY, J. (dissenting, with whom Gaziano and Cypher, JJ., join). Today the court recognizes that a defendant should be able to remove speculation regarding the absence of breathalyzer evidence from a trial on a charge of operating a motor vehicle while under the influence of alcohol (OUI) by requesting an instruction pursuant to Commonwealth v. Downs, 53 Mass. App. Ct. 195, 198 (2001). I agree. However, because I feel that the Commonwealth should also be able to remove such speculation by requesting the same instruction, I respectfully dissent.

A trial serves many purposes, but at its core, it is a search for truth. When jurors find facts, not from a fair consideration of the evidence, but rather based upon bewilderment as to why no evidence of a breathalyzer test was introduced, confidence in trial by jury in some measure incrementally dissipates. Perhaps one might respond: jurors are instructed to apply the facts to the law as given and not to speculate as to any unanswered questions they may have. A general instruction not to speculate is ineffective in the face of common knowledge of the breathalyzer test. The beauty and simplicity of the Downs instruction is that it thoroughly removes speculation regarding the absence of breathalyzer evidence without prejudicing the defendant or the Commonwealth.

In Downs, 53 Mass. App. Ct. at 199, the Appeals Court held that the jury instruction complained of here did not violate the

defendant's privilege against self-incrimination under art. 12 of the Massachusetts Declaration of Rights, noting that the jury "were simply but forcefully instructed that they were not to think about or otherwise consider the fact that no evidence was offered concerning the breathalyzer." The Appeals Court also pointed out the danger of allowing the specter of the breathalyzer to hang over the trial and that an OUI jury trial without any reference whatsoever to breathalyzer testing risks unfair prejudice to a defendant and the Commonwealth. Id. at 199 & n.2. That is to say, without some form of a limiting instruction concerning the breathalyzer, a jury very well could rely upon their common knowledge and engage in improper speculation.

Indeed, this type of speculation appears to have occurred at the defendant's first trial, which resulted in a mistrial. There, the jury asked the judge, "Are we allowed to ask: 'Why there are no tests?' eg. Breathalyzer or blood test?" Although that record is not before us, presumably the jury were given the general instruction that they were to decide the case on the evidence presented to them and not to speculate on anything not in evidence. Yet they still engaged in speculation.

The Downs instruction prevents precisely this kind of speculation and rests on the long-standing principle that the

jury are presumed to follow the judge's instructions.[1]  See

Commonwealth v. Cline, 213 Mass. 225, 227 (1913).  This

principle lies at the very heart of our justice system:

>     "Unless we proceed on the basis that the jury will
> follow the court's instructions where those instructions
> are clear and the circumstances are such that the jury can
> reasonably be expected to follow them, the jury system
> makes little sense.  Based on faith that the jury will
> endeavor to follow the court's instructions, our system of
> jury trial has produced one of the most valuable and
> practical mechanisms in human experience for dispensing
> substantial justice."

Delli Paoli v. United States, 352 U.S. 232, 242 (1957), rev'd on

other grounds by Bruton v. United States, 391 U.S. 123, 126

(1968).

---

[1] The court concludes that the presumption that the jury
follow instructions should apply equally to the general
instruction not to speculate as it does to the specific Downs
instruction.  The existence of a general instruction cannot,
however, preclude the possibility that a specific instruction is
needed.  For example, in a trial where autopsy photographs are
introduced, a general instruction that jurors should disregard
emotion and sympathy when reaching a verdict does not preclude a
judge from specifically instructing the jury on the proper use
of such photographs.  See Commonwealth v. Lawrence, 404 Mass.
378, 390 (1989).  Just because we send a jury navigating a rough
sea of complex legal issues a life raft (i.e., general jury
instructions) does not mean we should not also give them an oar
(i.e., a specific instruction or Downs instruction).

Further, a general instruction not to speculate may be
ineffective in the face of jurors' likely knowledge of the
scientific capability to measure the amount of alcohol in an
individual's blood.  Cf. Commonwealth v. Gray, 465 Mass. 330,
339-340 (2013) (not abuse of discretion "for voir dire questions
designed to counter any 'CSI effect'" in certain circumstances).

For more than fifteen years, Downs has been the law of this Commonwealth. See Commonwealth v. Gibson, 82 Mass. App. Ct. 834, 836 (2012). Nothing in this record suggests that the decision was in any way unsound. Because I believe the best way to prevent prejudice to the defendant and the Commonwealth is to allow either party to remove the threat of speculation from jury deliberations, I respectfully dissent.