COMMONWEALTH *vs.* STEPHEN M. MCGRAIL.

Middlesex. January 10, 1995. - March 22, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Constitutional Law,* Self-incrimination. *Evidence,* Intoxication, Field sobriety test, Breathalyzer test. *Motor Vehicle,* Operating to endanger, Operating under the influence. *Practice, Criminal,* Instructions to jury.

The court concluded that evidence of a person's refusal to submit to a "field sobriety test" after being stopped by a police officer for a motor vehicle offense constitutes testimonial or communicative evidence. [778]

The court concluded that, at the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, admission of evidence of the defendant's refusal to submit to field sobriety tests, which he was under no legal obligation to take, violated the defendant's privilege against self-incrimination secured by art. 12 of the Massachusetts Declaration of Rights. [778-780]

Where, at the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, evidence was admitted with regard to the defendant's refusal to submit to field sobriety tests, the error was not, in the circumstances, harmless beyond a reasonable doubt and a new trial was required. [780-781]

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on March 5, 1991.

On transfer to the jury session, the case was tried before *Robert V. Greco,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John H. LaChance* for the defendant.

*David R. Marks,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant appeals from his convictions of several motor vehicle offenses and the denial of his motion

for a new trial. We transferred the case from the Appeals Court to this court on our own motion.[1] We reverse the defendant's convictions and remand the case to the jury session of the Framingham District Court.

The defendant was charged with operating under the influence of intoxicating liquor and operating a motor vehicle negligently so as to endanger in violation of G. L. c. 90, § 24 (1990 ed.), operating a motor vehicle without a license in violation of G. L. c. 90, § 10 (1992 ed.), and a civil marked lanes infraction in violation of G. L. c. 89, § 4A (1992 ed.). On the first day of trial, the defendant filed a motion in limine to prohibit the Commonwealth from introducing evidence that the defendant refused to perform a field sobriety test at the scene of the arrest. After the defendant's motion was denied, the defendant was tried before a jury of six in the Framingham District Court and was found guilty of operating under the influence of intoxicating liquor, and operating to endanger. He was found "responsible" as to the civil marked lanes violation.

1. *Statement of the facts.* From the evidence presented the jury could have found the following facts. On March 5, 1991, at 12:30 A.M., a Framingham police officer observed a pickup truck turning onto Concord Street from School Street in Framingham. Concord Street is a two-lane road that is paved and well maintained. The officer saw the truck make a wide turn into the northbound lane of Concord Street while continuing to travel southbound. The truck then turned left onto A Street and pulled into a Mobil gasoline station located at the corner of A and Concord Streets. [2] After driving through the Mobil station the truck returned to A Street. For approximately one-eighth of a mile, the truck drove in the north-

---

[1] In October, 1992, a single justice of this court stayed the execution of the defendant's sentence pending his appeals.

[2] The back of the defendant's truck contained three big logs, about sixteen inches long and two feet in diameter. The defendant stated that the logs had become loose, prompting him to make the wide turn. The defendant stated that he pulled into the Mobil station to secure the logs and then changed his mind.

bound lane of A Street while heading southbound. When the truck turned right into the North High School parking lot, the officer activated both his cruiser's emergency blue lights and its flashing high beams. As the truck continued through the parking lot, the officer also activated the cruiser's siren. The truck then turned onto Lowther Road, swerving a number of times. Finally, the truck stopped approximately five feet from the curb at the end of Lowther Road.[3]

When the officer approached the truck, he asked the only occupant, the defendant, to produce his driver's license and registration.[4] After asking the officer what he wanted, the defendant told the officer to leave him alone. The officer again asked the defendant to produce the requested documents. After noticing that the defendant's breath smelled of alcohol, and observing that his speech was heavily slurred, that his eyes were bloodshot and watery, and that his face was very flushed, the officer asked the defendant to step out of the truck. The officer noticed that the defendant was having trouble maintaining his balance, and that he had to hold onto the side of the truck so that he could walk to the rear of the truck as the officer instructed.

When the defendant finally approached the curb at the rear of the truck, the officer asked the defendant to perform some field sobriety tests. The officer gave the defendant instructions as to how each test was to be performed and also explained the purpose of each test. The defendant stated that "[he was] not going to do any tests." Based on his observations, the officer formed the opinion that the defendant was highly intoxicated and placed him under arrest. Pursuant to police procedures, the officer then performed an inventory

---

[3]The defendant stated that he neither saw the cruiser's lights nor heard the cruiser's siren until halfway down Lowther Road, and that he did not pull over until the end of Lowther Road because he did not want to disturb any of the residences. He also indicated that he was swerving so as to avoid the numerous parked cars on Lowther Road.

[4]From the time that the truck was stopped until the time the defendant was taken to the police station for booking purposes, three more cruisers arrived at the scene.

search of the defendant's truck, finding a bag containing five empty "Lite" beer cans and a one-half pint of whiskey that was three-quarters empty on the passenger floor of the truck's cab. The truck's cab also contained a full quart of beer.

The officer then brought the defendant to the police station. At the station the booking officer indicated that the defendant had trouble responding to the questions being asked. More specifically, the defendant had trouble spelling his last name and it took him several tries before he was able to recite his home telephone number correctly. The booking officer also indicated that the defendant slurred his speech when responding to questions.

2. *Refusal evidence.* The defendant argues that his right against self-incrimination under art. 12 of the Massachusetts Declaration of Rights was violated when the judge admitted evidence of his refusal to submit to field sobriety tests.[5] Article 12 provides that no person shall be compelled in any criminal proceeding to furnish incriminating evidence against himself.[6] We have stated that, although the privilege against self-incrimination under art. 12 is broad, it protects only against the compulsion of communications or testimony and not against the production of real or physical evidence, such as fingerprints, photographs, lineups, blood samples, handwriting, and voice exemplars.[7] *Commonwealth* v. *Brennan,* 386 Mass. 772, 776, 780 (1982). Moreover, in order to establish a violation of the privilege, a defendant must not only establish that there was a communication, but also establish that such communication was compelled by the government.

---

[5]The defendant has not raised any arguments under the Fifth Amendment to the United States Constitution.

[6]Article 12 of the Massachusetts Declaration of Rights states in pertinent part: "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself."

[7]Field sobriety tests are dexterity tests. Therefore, because the test results are based on the subject's loss of coordination, rather than his subjective knowledge of the crime, the test results constitute real or physical evidence. *Commonwealth* v. *Brennan,* 386 Mass. 772, 779, 783 (1982).

Commonwealth *v.* McGrail.

*Opinion of the Justices,* 412 Mass. 1201, 1206 (1992).
Therefore, in this case, we must determine whether a refusal
to take a field sobriety test constitutes testimonial evidence,
and if so, whether the use of such evidence constitutes gov-
ernmental compulsion.

We begin our analysis by examining whether the evidence
of the defendant's refusal is testimonial or real. Ordinarily, a
prosecutor wants to admit evidence that the defendant re-
fused to take a field sobriety test so that the jury may infer
that it is the equivalent of his statement, "I have had so
much to drink that I know or at least suspect that I am una-
ble to pass the test." *Opinion of the Justices, supra* at 1209.
Such refusal evidence, therefore, would be relevant to show
that the defendant believed that the test results would tend
to incriminate him. Because the refusal, in essence, consti-
tutes testimony concerning the defendant's belief on a central
issue to the case, we conclude that the evidence of the de-
fendant's refusal to submit to a field sobriety test constitutes
testimonial or communicative evidence. See *Opinion of the
Justices, supra* (evidence of defendant's refusal to take
breathalyzer test is testimonial evidence); *Commonwealth* v.
*Brennan, supra* at 777 ("testimonial evidence" reveals a per-
son's knowledge or thoughts concerning some fact). This
brings us to the issue of whether evidence of refusal can also
be said to be compelled.

The Justices recently considered the constitutionality of a
proposed law making evidence of a person's refusal to take a
breathalyzer test admissible in a criminal trial.[8] *Opinion of
the Justices, supra.* The Justices noted that States that per-
mit the introduction of such evidence do not compel but only
encourage a defendant to take such test. *Id.* at 1211. See
*South Dakota* v. *Neville,* 459 U.S. 553, 564 (1983) (statutes
encourage person to take test because "inference of intoxica-

---

[8]The language of the proposed statute stated in pertinent part: "Evi-
dence that the defendant failed or refused to consent to [a breathalyzer]
test or analysis shall not be admissible in a civil proceeding, but shall be
admissible in a criminal proceeding . . . ." *Opinion of the Justices,* 412
Mass. 1201, 1202 (1992).

tion arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test").

The Justices disagreed with this reasoning, concluding instead that statutes that allow for the admission of refusal evidence compel the accused "to choose between two alternatives, both of which are capable of producing evidence against him. [Such statutes], therefore, [use] the threat of adverse testimonial evidence as a coercive tool to compel submission to a breathalyzer test. The accused is thus placed in a 'Catch-22' situation: take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial." *Opinion of the Justices, supra* at 1211. The Justices therefore advised the Legislature that the proposed statute would be unconstitutional under art. 12 because it would compel a defendant to furnish evidence against himself. *Id.* See *Commonwealth v. Lydon*, 413 Mass. 309, 313-315 (1992) (erroneous to admit evidence of defendant's refusal to have hands swabbed for gun powder residue because use violated defendant's privilege against self-incrimination secured by art. 12).

We see very little difference between evidence of refusal to take a breathalyzer test and refusal to take a field sobriety test.[9] The judge correctly instructed the jury that, in Massachusetts, a driver is under no legal obligation to submit to field sobriety tests even if requested to do so. Because the defendant was not required to perform the tests, it would be unsound to allow the Commonwealth to use evidence of the defendant's refusal against him at trial. More specifically: "Because [the] defendant had no obligation to take the test, there [should] be no conditions placed on his refusal. Use of

---

[9]The Commonwealth contends that the officer's request that the defendant perform a field sobriety test was merely part of a threshold inquiry during a routine traffic stop, and therefore, there was no indicia of compulsion implicit in the situation. *Terry* v. *Ohio*, 392 U.S. 1, 29 (1968). While we acknowledge that police officers are permitted to make limited inquiries as part of a *Terry*-type stop to obtain information confirming or dispelling the officers' suspicions, we do not agree that that principle determines the outcome of this case.

the fact that he refused enables the [Commonwealth] to obtain communicative evidence to which it would otherwise have no right, as a result of [the] defendant's refusal to provide noncommunicative evidence to which it also had no right." *State* v. *Green*, 68 Or. App. 518, 526 (1984). Moreover, if we were to allow such refusal evidence to be used against the defendant at trial, then the only way for the defendant to prevent the use of such refusal evidence would be for him to take the field sobriety test. Therefore, allowing such refusal evidence to be admissible at trial would compel defendants to choose between two equally unattractive alternatives: "take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial." *Opinion of the Justices, supra* at 1211. As a result, we conclude that the refusal evidence should not have been admitted since its use violated the defendant's privilege against self-incrimination secured by art. 12. See *State* v. *Green, supra* (refusal evidence compelled and therefore inadmissible). Moreover, even though there was ample evidence admitted at trial with regard to the defendant's state of intoxication, we cannot conclude that admitting such evidence was harmless beyond a reasonable doubt. *Commonwealth* v. *Perrot*, 407 Mass. 539, 548-549 (1990).

3. *Retroactivity.* Before briefs had been filed in this case, and prior to oral argument, our opinion in *Commonwealth* v. *Zevitas*, 418 Mass. 677 (1994), was released. There we concluded that the instruction mandated by G. L. c. 90, § 24 (1) (*e*), violated the self-incrimination provisions of art. 12.

The defendant argues on appeal that it was error for the judge to give that mandated instruction concerning the lack of evidence of a breathalyzer test. Since we reverse the defendant's convictions on other grounds, we need not address the question whether the *Zevitas* holding should be applied retroactively to the facts of the instant case. However, we observe that, where evidence of the defendant's refusal to take a field sobriety test had been introduced, the mandated instruction enhanced the likelihood that the jury would draw

the impermissible inference that the defendant refused to take both types of tests because he was too intoxicated to pass either test.

The Commonwealth argues that *Zevitas* established a new rule not clearly foreshadowed by prior precedents and, therefore, it should not be applied retroactively. *Commonwealth* v. *Breese*, 389 Mass. 540, 541-543 (1983). The Commonwealth also contends that the issue is not before us because the defendant failed to object to the charge on that basis. Generally, new constitutionally based rules will be applied to all cases pending on direct appeal as to which the issue was preserved below. *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202-203 (1992), and cases cited. Because it does not appear that the issue decided by *Zevitas* was raised below, and because if applied it would not affect the outcome of this case, we decline to reach the question.

For the foregoing reasons, we hold that both of the defendant's convictions should be reversed and the case should be remanded to the jury session of the Framingham District Court for a new trial.

*So ordered.*