Sanders, J.
On July 9,2004, this Court allowed one of two Motions to Suppress Evidence filed by the defendant. In allowing that Motion (“Motion to Suppress II”), this Court held that a gun found as a result of an unlawful interrogation of the defendant could not be admitted at trial because it was “fruit of the poisonous tree.” Wong Sun v. United States, 371 U.S. 471, 486 (1963). The Commonwealth now asks the Court to reconsider its ruling in light of United States v. Patane, 542 U.S. _, 124 S.Ct. 2620 (2004) (“Pat-one”). Although the Court agrees with the Commonwealth that the Supreme Court decision is controlling as to the Fifth Amendment issue presented by this case, I nevertheless conclude that my initial decision allowing the Motion was the correct one on state law grounds, for the following reasons.
BACKGROUND
Preliminarily, it is important to review the facts underlying Motion to Suppress II. On March 26, 2002, police were dispatched to an apartment at 135 Townsend Street following a 911 call that a man at that address had threatened the caller with a gun. The caller was present at the scene and gave further details to the police when they arrived. Based on the facts that I found following an evidentiary hearing, the police were justified in entering the apartment and in arresting the defendant as the assailant. The defendant was handcuffed, but was not advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).
Sergeant Detective Gregory Gallagher, who accompanied officers into the apartment, informed the defendant of the caller’s accusations and expressed a desire to find the gun that the caller had described. The defendant initially denied using a gun and directed the police to a knife in a coat pocket; the alleged victim, however, insisted that this was not the weapon. Gallagher then continued to question the defendant about the gun, telling him that the police could secure the apartment and seek a search warrant to find the gun; alternatively, the defendant could tell Gallagher where the gun was.
The defendant asked to talk to Gallagher in the bedroom, out of the hearing of the other officers. In the bedroom, the defendant told Gallagher that the individual who had called 911 had been harassing him. Gallagher promised that police would look into that claim but said that he remained concerned about where the gun was. The defendant told Gallagher that it was in the bedroom closet. Gallagher went to the area indicated by the defendant and the gun was discovered inside a Fannie pack on a closet shelf.
*424 This Court found that (apart from the Miranda violation) the defendant’s statements were not coerced and were not the result of police trickery or deception. The defendant, who has a long criminal record, is a seasoned veteran of the court system and was not unaware of his rights.[1] He was not under the influence of any drugs or alcohol, and understood what was going on. Because he was in custody, however, he should have been given his Miranda warnings. Conceding that a Miranda violation had occurred, the government agreed that all of the defendant’s statements (including his statement as to where Gallagher could find the gun), could not be used against him at trial.
Nevertheless, the Commonwealth took the position that the physical evidence against the defendant (that is, the gun) should not be suppressed because the defendant’s statements constituted consent to the search which resulted in the gun’s discovery. This Court disagreed: because the consent was the fruit of an unlawful interrogation, it could not justify the search of the closet.
Two weeks before this Court rendered its decision, however, the United States Supreme Court decided Patane. As the Commonwealth points out, the facts of that case are remarkably similar to the instant one. The defendant was properly arrested for a restraining order violation. Prior to the arrest, police had developed some information that the defendant could have a gun. When the defendant was arrested, a police officer started to inform him of his Miranda warnings, but stopped when the defendant said that he knew his rights. After some conversation, the defendant told the police where they could find the gun he was suspected of having. The District Court allowed a motion to suppress the gun. The Court of Appeals for the Tenth Circuit affirmed, holding that the defendant’s statements as to the gun’s location could not provide a lawful basis for the seizure of the gun because ofthe Mirandaviolation. Patane, 304 F.3d 1013, 1019 (10th Cir. 2002). In a 5-to-4 vote, the Supreme Court reversed, holding that a Miranda violation does not require suppression of physical evidence discovered as a result of otherwise voluntary statements by the defendant. Patane, 124 S.Ct. at 2624. The exclusion of the statements themselves is a “complete and sufficient remedy” for the Fifth Amendment violation. Patane, 124 S.Ct. at 2630, quoting Chavez v. Martinez, 538 U.S. 760, 790 (2003) (Kennedy, J., concurring in part and dissenting in part).
This Court finds the Supreme Court’s decision troubling, and is far more persuaded by the dissenting opinion, which notes that the holding gives an “evidentiary advantage” to those who ignore the Miranda rule and thus provides an “important inducement” for its violation. Patane, 124 S.Ct. at 2631 (Souter, J., dissenting). However, I am bound to follow the Supreme Court in interpreting and applying the Fifth Amendment. If I decided this Motion strictly on federal constitutional grounds, I would have to deny it. The Motion alleges both a violation of the United States Constitution as well as the Declaration of Rights,[2] however, thus injecting into the case the question of whether our own state law provides more protection to the criminal defendant under these circumstances than the United States Constitution. An analysis of state court precedent to date leads me to conclude that it does.
DISCUSSION
The text of art. 12 of the Declaration of Rights is quite similar to that of the Fifth Amendment. It protects a criminal defendant from being “compelled to accuse, or furnish evidence against himself.” Like the Fifth Amendment, the privilege forbids the “forced extraction of confessions and admissions from the lips of the accused.” Commonwealth v. Brennan, 386 Mass. 772, 780 (1982); see also Commonwealth v. Burgess, 426 Mass. 206, 218 (1997). It prevents the government from compelling the defendant to produce testimonial or communicative evidence; it is not a bar to the compelled production of physical evidence (although art. 14 and the Fourth Amendment may apply). Thus, for example, art. 12 does not prevent the government from requiring an individual to undergo a breathalyzer and field sobriety tests when arrested for drunk driving. Commonwealth v. McGrail, 419 Mass. 774, 779 (1995); Opinion of the Justices, 412 Mass. 1201, 1208 (1992). It would, however, bar the government from using at trial the individual’s refusal to perform those tests, since the refusal is testimonial in nature.
If the line between testimonial and communicative evidence is sometimes hard to draw, there has never been any question that the privilege against self-incrimination does apply where a defendant is the subject of a custodial interrogation. Indeed, that is precisely the environment in which an infringement of the privilege is likely to occur, given the inherent coerciveness of the setting as well as the difficulty in monitoring police conduct in the custodial context. With these concerns in mind, the United States Supreme Court in Mirandafashioned a set of prophylactic rules to ensure that the statements that a criminal suspect gave to the police did not run afoul of his Fifth Amendment right against self-incrimination. Miranda in effect created a presumption that, unless the suspect was given specific warnings, his statements were coerced and thus could not be used against him at trial. Although the Supreme Judicial Court has not specifically adopted those same rules for purposes of art. 12, the similarities between the Fifth Amendment and art. 12, both in their language and in their purpose, suggest that these rules have state constitutional underpinnings as well. See Commonwealth v. Mavredakis, 430 Mass. 848, 858-59 (2000) (discussed below).
The question of whether police conduct implicated the Fifth Amendment and art. 12 is not the issue before the Court. It is undisputed that the defendant was the target of a custodial interrogation. Having entered the defendant’s apartment with the purpose of arresting him, police handcuffed him and began to question him concerning the location of the gun. It is also undisputed *425 that officers did not advise the defendant of his Miranda rights. His statements, including the statement which pointed police to a closet where the gun was found, are presumed to be involuntary as a result. Accordingly, the issue this Court must decide is not whether the police violated the defendant’s constitutional rights: they clearly did. Rather the issue is what consequences follow from that violation: should only the statements be excluded, or should all evidence which is “fruit of the poisonous tree” be suppressed as well?[3]
The Commonwealth (in line with the reasoning of five Supreme Court Justices in Patane) argues that, if the “fruit” of a violation of the privilege against self-incrimination is physical evidence rather than statements, the physical evidence should not be suppressed. But the fruit of the poisonous tree doctrine has never turned on what kind of evidence was seized as a result of a constitutional violation. See Wong Sun v. United States, 371 U.S. 471, 486 (1963) (stating that the policies underlying the exclusionary rule do not invite “any logical distinction” between physical and verbal evidence). Nor has the analysis — at least by any state court in Massachusetts— been different depending on whether the underlying police conduct violated the Fourth Amendment rather than the Fifth (or Sixth) Amendment. Rather, the inquiry has always been whether there is a close enough connection between the unconstitutional conduct and the evidence obtained as a result of that conduct, such that the evidence must be excluded from trial. If the “taint” of the unlawful conduct has dissipated, the objectives of the exclusionary rule would not be served and the evidence should not be suppressed. If the taint is still present, then the rule should be applied to exclude the evidence in order to remove the evidentiary incentive that the police would have to repeat such conduct.
Although Patane does appear to diverge from state court precedent, it was not the first time that the United States Supreme Court had drawn a distinction between types of constitutional violations and cut back significantly on the application of the “fruits” doctrine where the police misconduct was in violation of an individual’s Fifth Amendment rights. For example, in Oregon v. Elstad, 470 U.S. 298 (1985), the Court refused to excluded a defendant’s statement made only an hour after he had been interrogated without the benefit of Miranda warnings. Stating that a “procedural Miranda violation differs in significant respects from violations of the Fourth Amendment, which have traditionally mandated a broad application of the ‘fruits’ doctrine,” the Court decided that the taint of the original unlawful conduct was removed when the police later gave the defendant his Miranda warnings and he repeated his earlier admissions. 470 U.S. at 306. The Court repeatedly downplayed the seriousness of the original error of the police, stating that the statement that the defendant gave without Miranda warnings was not “actually” coerced and was made under circumstances where “authorities have acted legitimately]” and have not used “improper tactics.” Id. at 306, 312-13. As Judge Brennan commented in dissent: “One can only respond: whither went Miranda?” Id. at 355.
In attempting to predict whether our own supreme court would reach the same result as the United States Supreme Court in the instant case, I conclude that the SJC is not willing to join up in what the dissent in Oregon v. Elstad characterized as a “studied campaign to strip the Miranda decision piecemeal and to undermine the rights Miranda sought to secure.” 470 U.S. at 319. Rather, the case law suggests that the SJC regards art. 12 violations as no less serious than art. 14 violations and is "willing to impose consequences for police failures to comply with Miranda in situations where the United States Supreme Court has been willing to look the other way. More generally, there is no indication in state court precedent that the SJC draws a distinction between types of constitutional violations in applying the fruit of the poisonous tree doctrine. If the police conduct is unconstitutional, the analysis set forth in Wong Sun is to be applied.
In cases where the facts are strikingly similar to the instant one, neither the Appeals Court nor the SJC has hesitated in applying that doctrine where statements taken in violation of Miranda resulted in the discovery of physical evidence. Thus, in Commonwealth v. DiMarzio, 436 Mass. 1012, 1013 (2002), the SJC reversed the lower court’s denial of a motion to suppress drugs which were found after the defendant, without the benefit of Miranda warnings, told the officers where to find the drugs. Although the Appeals Court had reversed the lower court on different grounds, the SJC specifically chose to focus on the Fifth Amendment violation, stating that, because the police found the drugs only because of statements obtained in violation of the defendant’s Miranda rights, the discovery and seizure of the drugs were “fruit of the poisonous tree.”
The same year that DiMarzio was decided, the Appeals Court reached a similar result in Commonwealth v. Barros, 56 Mass.App.Ct. 675 (2002). In that case (as in the case before this Court) a defendant was unlawfully questioned in his home, without the benefit of Miranda warnings, an interrogation which the lower court had determined to be custodial in nature. In the course of that interview, he showed the police some physical evidence, which they seized. Holding that the defendant’s statements leading the officers to that evidence was fruit of the poisonous tree, the Appeals Court concluded that the lower court properly suppressed the evidence. Again, that the “fruits” doctrine applied to this Fifth Amendment violation was not even questioned; the only issue was whether the evidence would have been inevitably discovered.[4]
Perhaps of greatest significance are those decisions where the SJC has diverged from the United States Supreme Court so as to afford criminal defendants greater protection under art. 12 than that they would be entitled to receive under the Fifth Amendment. These *426 decisions have followed in the wake of Supreme Court decisions which have chipped away at Miranda, either by holding that police conduct does not run afoul of the Fifth Amendment at all, or that (as in Patane) even if there was a violation, subsequently discovered evidence need not be excluded. Thus, for example, the Supreme Court ruled in Moran v. Burbine, 475 U.S. 412 (1986), that the Fifth (and Sixth) Amendments did not require police to inform a suspect of an attorney’s efforts to render legal services to him where the suspect had not himself requested such representation. Taking up the issue for the first time in Commonwealth v. Mavredakis, 430 Mass. 848 (2000), the SJC reached a quite different result under art. 12, holding that there could be no valid waiver of Miranda without the police informing the suspect that an attorney was there willing to help him. In reaching that result, the SJC noted that the “text of art. 12 as it relates to self-incrimination is broader than the Fifth Amendment,” and requires a “higher standard of protection than that provided by Moran.” 430 Mass. at 858-59. If there was any doubt that the SJC viewed Miranda as having state as well as federal constitutional underpinnings, it would seem that this case resolved those doubts in holding that art. 12 imposed substantive obligations on police in the custodial context which were greater than that imposed by the Fifth Amendment.
In addition to the decision in Mavredakis, the SJC’s holding in Commonwealth v. Smith, 412 Mass. 823 (1992), is of significance to the issues presented here. In that case, the SJC declined to follow the Supreme Court’s holding in Oregon v. Elstad, supra, and held that a failure to give Miranda warnings to a suspect when he makes an initial incriminating statement thereby prevents the admission of a statement made later and after the administration of Miranda warnings. Although the ostensible basis for the SJC’s decision was state common-law grounds, the Court emphasized that “any confession obtained in the absence of proper Miranda warnings is by definition ‘coerced’ — regardless of how ‘friendly’ the actual interrogation.” 412 Mass. at 836, quoting State v. Lavaris, 99 Wash.2d 851, 857, 664 P.2d 1234 (1983). This is in sharp contrast to the United States Supreme Court’s view, expressed not only in Oregon v. Elstad but also in Patane, that the Fifth Amendment violation was not a serious one in light of the fact that the statements which were made by the defendant without the benefit of Miranda warnings were not involuntary. The SJC has consistently adhered to the premise that such statements are presumed involuntary, noting the difficulties that courts have in delving into the circumstances of statements by suspects made in the back rooms of police stations (or out of sight in their own bedrooms, as in the instant case) — the reason why Miranda warnings were required in the first place.
Turning to the case before me, this Court therefore applies this presumption of mvoluntariness to the statement that the defendant made to the police directing them to the closet where the gun was found. This was a search which could be justified only on the basis of consent, but that consent must be presumed to have been given without the voluntariness that our state law requires. Hence, the art. 12 violation (the failure of the police to Mirandize the defendant) led to an art. 14 violation (a search made without consent freely given, as required by state law). This Court is convinced that this is not police conduct which the SJC would condone. To deter such conduct, the fruit of the poisonous tree doctrine must be applied, compelling a finding that the defendant’s consent was invalid and that the physical evidence discovered as a result of the defendant’s statements must be suppressed.
CONCLUSION AND ORDER
For all the foregoing reasons, this Court holds that its original decision ALLOWING Motion to Suppress II was the correct one, on state law grounds.

 After the gun was discovered, the defendant was informed of his Miranda rights. As a police officer read them, the defendant interrupted and said that he knew them already.

It is true (as the Commonwealth argues) that the Motion referenced only art. 14 of the Declaration of Rights rather than art. 12 and that the defendant did not initially raise the Miranda violation as a grounds for the Motion. I cannot accept the Commonwealth’s argument, however, that the issue regarding the consequences of a Miranda violation was therefore waived. As soon as the testimony showed that the defendant had not been given his Miranda warnings, the Court itself raised the issue, and the government has had ample opportunity to address it. Moreover, there is some overlap here between the two provisions: as discussed herein, the search of the closet would have been a violation of art. 14 had it not been for the alleged consent of the defendant, which was obtained in violation of the his rights under art. 12. Finally, the defendant has since moved to formally amend his Motion to Suppress — a request which this Court allowed.

The Commonwealth thus misstates the issue when it argues that I must deny the defendant’s Motion because art. 12 has never been applied to physical evidence. The dissent in Patane noted the same error in the majority’s reasoning with respect to the Fifth Amendment, stating:
The majority repeatedly says that the Fifth Amendment does not address the admissibility of nontestimonial evidence, an overstatement that is beside the point. The issue actually presented today is whether courts should apply the fruit of the poisonous tree doctrine lest we create an incentive for the police to omit Miranda warnings before custodial interrogation.
Patane, 124 S.Ct. at 2631 (Souter, J., dissenting).

Although the case involved a Sixth Amendment violation, the SJC’s analysis in Commonwealth v. Perrot, 407 Mass. 539 (1990), is further illustration of the Court’s willingness to apply the fruit of the poisonous tree doctrine outside of the Fourth Amendment context. In that case, the SJC held that physical evidence which was discovered only because of statements made by the defendant after he had been appointed counsel should have been excluded from evidence at his trial. The only question that merited discussion by the Court was whether the evidence could be admitted under the inevitable discovery exception to the “fruits” doctrine, not whether the doctrine itself applied. See also Commonwealth v. Cryer, 426 Mass. 563, 568 (1998) (holding that the art. 12 can — and in that case did — provide greater protection than the United States Constitution with regards to the defendant’s right to effective assistance of counsel).