COMMONWEALTH *vs.* STEPHEN RANIERI.

No. 04-P-1298.

Middlesex. October 6, 2005. - January 12, 2006.

Present: GREENBERG, BECK, & MILLS, JJ.

*Evidence,* Prior conviction, Field sobriety test, Intoxication. *Constitutional Law,* Self-incrimination. *Motor Vehicle,* Operating under the influence.

A Superior Court judge's decision to defer until trial her decision on a criminal defendant's motion in limine to exclude any reference to certain evidence was in accord with case law and, in the circumstances, did not constitute an abuse of discretion or a denial of the defendant's right under the Sixth Amendment to the United States Constitution to present a defense. [367-369]

At the trial of indictments charging, inter alia, operation of a motor vehicle while under the influence of liquor, the judge's admission in evidence of the defendant's refusal to submit to a field sobriety test violated the defendant's right against self-incrimination under art. 12 of the Massachusetts Declaration of Rights and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution [370-373]; where the evidence of the defendant's impairment by alcohol was not overwhelming, and where the judge failed to deal with the inadmissible evidence in her instructions to the jury, the error was prejudicial and required reversal of the convictions [373].

INDICTMENTS found and returned in the Superior Court Department on June 20, 2002.

The cases were tried before *Wendie I. Gershengorn,* J.

*Joseph J. Balliro, Sr.,* for the defendant.

*Stephen C. Hoctor,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. The defendant was found guilty by a jury in Superior Court of operating under the influence of liquor (OUI) and operating to endanger. Following the jury trial, the judge found the defendant guilty on an indictment charging that the OUI violation was the defendant's third in the past ten years.

On appeal, the defendant alleges, inter alia, error in the judge's failure to allow his motion in limine to exclude reference at trial to his prior bad acts, and in the admission of testimony that he at first refused to take a roadside sobriety test on the night of his arrest. Because we conclude that the defendant was prejudiced by the improper admission of evidence of his initial refusal to recite the alphabet following his stop by the police officer, we reverse the convictions.

We comment briefly on the defendant's claim that he suffered prejudice of constitutional magnitude due to the judge's deferral of a decision on his motion in limine to exclude any reference to evidence, contained in the notes of his proposed expert witness, of his past alcohol abuse and prior OUI convictions until such time as the expert had testified. To the degree that the judge refused to rule definitively on the motion, she acted within her discretion. The judge was not required to rule on the motion at the outset of the case. She was well aware that she had discretion to bar the use of the defendant's prior convictions for impeachment. See *Commonwealth* v. *Drumgold*, 423 Mass. 230, 249 (1996). She indicated that she would rule on the matter when, and if, the defendant chose to call his psychiatrist, Dr. Ackerman, as a defense witness. It appears that Ackerman's notes, which were not admitted in evidence, contained both references to the defendant's use of alcohol and his prior OUI convictions, as well as exculpatory evidence concerning his mental state at the time of his arrest for OUI in the instant case. The defendant testified, along with several other lay witnesses. But at the close of his case, defense counsel did not raise the issue again and did not call Ackerman or any other expert witness.

The defendant argues that Ackerman's testimony would have had a significant impact on the outcome of the case because his expert medical opinion would have reinforced the defendant's claim that his unruly behavior at the police station was a manifestation of his bipolar disorder and not caused by his use of alcohol. He claims he was effectively foreclosed from calling Ackerman, however, without advance assurance from the judge that Ackerman could not be cross-examined regarding his notes in which the defendant's past alcohol use and OUI convictions were mentioned. The judge's refusal to rule on the matter until

the issue was raised during cross-examination of Ackerman was in accord with the case law. See *Commonwealth* v. *Pina,* 406 Mass. 540, 550 (1990) (noting that, although an advance ruling may be desirable, it is not required). The reason for the rule is that the right to present a defense must be tempered by the legitimate demand of the adversary system that witnesses not be completely immunized from valid cross-examination. See *United States* v. *Nobles,* 422 U.S. 225, 241 (1975) ("The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversary system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth"); *Commonwealth* v. *Drumgold,* 423 Mass. at 248-249, quoting from *Lawson* v. *Murray,* 837 F.2d 653, 655 (4th Cir.), cert. denied, 488 U.S. 831 (1988) ("It follows that although a defendant has a right to present witnesses in his defense, that right 'does not carry with it the right to immunize the witness from reasonable and appropriate cross-examination' "). Cf. *United States* v. *Havens,* 446 U.S. 620, 626 (1980) ("There is no gainsaying that arriving at the truth is a fundamental goal of our legal system. . . . We have repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences" [citations omitted]).

The defendant relies upon *Commonwealth* v. *Sheehan,* 435 Mass. 183, 190 (2001), to bolster his claim that the exclusion of evidence can be a denial of the right under the Sixth Amendment to the United States Constitution to present a defense. However, that case is distinguishable. In *Sheehan,* the judge reviewed the mental health records of the child complainant in a sexual assault case and decided to exclude them. The Supreme Judicial Court stated that the evidence "provide[d] abundant fodder for cross-examination of [the complainant] and his mother" and that its exclusion deprived the defendant of a fair trial. *Id.* at 188. Here, the trial judge did not exclude the expert's testimony. Instead, defense counsel made the reasonable tactical decision to forgo Ackerman's testimony rather than run the risk that the Commonwealth could lay a foundation to use prior convictions or evidence of alcohol abuse mentioned in the doctor's notes to impeach him. As we have noted, trial counsel

could have called Ackerman as a witness and, on cross-examination, objected to the prosecutor's attempt to use the prior acts for an impermissible purpose.

An alternative theory of relief urged by the defendant is that the judge impermissibly allowed the prosecutor to introduce evidence of the defendant's refusal to submit to that part of a field sobriety test that required him to recite the alphabet. In order to consider this argument, it is necessary to recite the salient facts. At 1:20 A.M., Weston police Sergeant Daniel Maguire was on patrol driving westbound on Route 20, nearing its intersection with School Street. He could see four vehicles approaching the intersection on the eastbound side of Route 20. As he approached the intersection, he saw the defendant's car, heading north on School Street, run the red light "at a pretty good speed" and turn onto Route 20, causing the first two cars in the eastbound lane of Route 20 to brake hard and the others to swerve to avoid collision. Maguire, still in his cruiser, gave chase. The defendant's car accelerated on Route 20 to an estimated speed of fifty-two miles per hour (in a posted forty mile per hour zone) and for a time crossed over the solid yellow line. Maguire activated his blue lights, and the defendant slowed and came to a stop in the middle of the travel lane. After the defendant moved into the breakdown lane, Maguire walked up to his vehicle and asked him for his license and registration. He smelled the odor of an alcoholic beverage coming from the defendant's vehicle. Maguire testified that when asked to step out of his car, the defendant hesitated and then stumbled forward as he left the vehicle. He swayed as he stood at the rear of the vehicle. It was at this juncture that the event at issue took place.

As part of a standard field sobriety test, Maguire asked the defendant to recite the alphabet. The defendant said, "No." Maguire asked the defendant if he did not know the alphabet, or whether he did not want to say it. The defendant responded by beginning the recitation. When he reached the letter "P," he stopped briefly, then continued to the letter "Z," omitting several letters, including "Q," "T," and "U." Maguire noticed that the defendant's speech was somewhat slurred during the test.

After announcing that the defendant was under arrest for

operating under the influence, Maguire handcuffed him and drove him to the police station nearby. There the defendant burst into a tirade which included name calling and profanity. He was uncooperative and hostile during the booking procedure. The defendant's wife. was called to the station to help pacify him, but she was also rebuked.

For his part, the defendant testified that he had spent the day of his arrest at a party at Suffolk Downs racetrack, celebrating his graduation from law school. The defendant had recently joined Weight Watchers, and claimed that he limited his alcohol consumption that day to one drink. Several other defense witnesses testified that the defendant was not a "drinker" and that they had not seen him drinking at the party.

Before trial, in response to the defendant's motion in limine, the prosecutor informed the judge that she did not intend to introduce evidence that the defendant had refused the field sobriety test. The prosecutor nonetheless raised the issue during Maguire's direct examination. We quote the critical query in the margin.[1]

In Massachusetts it is settled that at a criminal trial, evidence

---

[1]PROSECUTOR: "And once you got him — once he walked to the back of the car, describe how he was standing?"

MAGUIRE: "He was standing, he appeared very, very rigid and he was swaying. It was almost a circular sway. He was going left and right, but it was a continuous-type motion in his body."

PROSECUTOR: "What's the next thing that you asked him?"

MAGUIRE: "At that time, I had asked him if he would say the alphabet for me."

DEFENSE ATTORNEY: "Well, I'm going to object, Your Honor."

THE COURT: "He may have it."

PROSECUTOR: "And what did he say?"

DEFENSE ATTORNEY: "And once again, I object, Your Honor."

THE COURT: "He may have it."

MAGUIRE: "He said no."

PROSECUTOR: "And what did you say?"

MAGUIRE: "I asked him, I says, 'it's because you do not know the alphabet or you don't want to say it?' "

PROSECUTOR: "And what did he do next?"

MAGUIRE: "He started reciting the alphabet."

that the defendant refused to consent to a blood test or analysis of breath to detect alcohol is not admissible. See *Opinion of the Justices*, 412 Mass. 1201, 1210-1211 (1992); *Commonwealth* v. *Zevitas*, 418 Mass. 677, 681-684 (1994) (evidence of refusal to submit to a blood alcohol test under G. L. c. 90, § 24[1][*e*], is not admissible). The leading case on the inadmissibility of evidence of refusal to submit to the more general types of field sobriety tests is *Commonwealth* v. *McGrail*, 419 Mass. 774 (1995). Underlying the reasoning in this line of cases is the proposition that refusal evidence is testimonial in nature and that its admission violates the privilege against self-incrimination under the Declaration of Rights of the Massachusetts Constitution. See *Opinion of the Justices*, 412 Mass. at 1209-1210. Contrast *South Dakota* v. *Neville*, 459 U.S. 553, 564 (1983) (in which the United States Supreme Court held that the admission in evidence of a refusal to submit to a breathalyzer test does not offend the Fifth Amendment to the United States Constitution).

The defendant argues that the judge impermissibly allowed refusal evidence to be placed before the jury, violating his right against self-incrimination under art. 12 of the Massachusetts Declaration of Rights, as well as the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. In particular, he relies upon *McGrail*, where the defendant filed a motion in limine to exclude refusal evidence. During the trial, the motion was denied. On appeal, McGrail argued that admitting the refusal evidence was a violation of his right against self-incrimination under art. 12 of the Massachusetts Declaration of Rights. The court ruled that as the Commonwealth sought to introduce the refusal to show "that the defendant believed that the test results would tend to incriminate him," the refusal constituted testimony. *Commonwealth* v. *McGrail*, 419 Mass. at 778. Since the defendant had the right to refuse the test, allowing evidence of his refusal would put him in a " 'Catch-22' situation: take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial." *Id.* at 779, quoting from *Opinion of the Justices*, 412 Mass. at 1211. Thus, the court concluded, where the defendant had no obligation to take the test, the introduction of evidence of his refusal to do so violated his privilege against self-incrimination under art. 12.

The Commonwealth would distinguish the instant case from *McGrail* by arguing that once the defendant began reciting the alphabet, it trumped his initial refusal. The argument has surface appeal, but in most material respects, it was rejected in *Commonwealth* v. *Grenier*, 45 Mass. App. Ct. 58 (1998), where the defendant was pulled over by a police officer shortly after midnight for driving erratically. The officer noticed that the defendant had "a strong odor of an alcoholic beverage coming from his breath [and that h]is eyes were red, bloodshot, and glassy." *Id.* at 59-60. The officer asked him to recite the alphabet, and the defendant did so, "slowly and deliberately . . . like he had to think about [it]. . . ." *Id.* at 60.

The defendant was then asked to perform a balancing test by standing on one leg. He stated that he could not do the test, and the officer told him he had a choice whether to do the test or not. The defendant suggested in response that "if he did the test and failed that [the officer] would arrest him and that if he didn't perform the test, [the officer] would arrest him." *Ibid.* When the officer confirmed this, the defendant said, "Take me," and was arrested. *Ibid.*

On this evidence, the trial judge in *Grenier* distinguished the case from *McGrail*, noting that the defendant in *Grenier* said he "could not do it," as opposed to refusing to do it, and that the exchange between the defendant and the officer was a negotiation and not a refusal. *Ibid.* We disagreed and concluded that Grenier's statements were the equivalent of a refusal. *Id.* at 61. The rationale in *Grenier* was exactly that laid out in *McGrail*. The defendant could take the test and fail, or refuse to take the test and have evidence of such refusal used against him at trial.

While it is true that the defendant here did ultimately attempt and fail the alphabet test, the logic for denying the admission of his initial refusal is identical to that applied in the *Grenier* and *McGrail* cases. In hearing the defendant's refusal, the jury could have drawn a negative inference, making it "the equivalent of [the] statement, 'I have had so much to drink that I know or at least suspect that I am unable to pass the test.' " *Commonwealth* v. *Grenier*, 45 Mass. App. Ct. at 61, quoting from *Opinion of the Justices*, 412 Mass. at 1209. This makes it

the equivalent of compelled self-incrimination and is not properly admissible against the defendant.[2]

The remaining issue is whether the error was harmless beyond a reasonable doubt. See *Chapman* v. *California*, 386 U.S. 18, 24 (1967); *Commonwealth* v. *Kelleher*, 395 Mass. 821, 827 (1985); *Commonwealth* v. *Perrot*, 407 Mass. 539, 548-549 (1990). Many factors figure into the amalgam, including whether "erroneously admitted evidence was 'merely cumulative' of evidence properly before the jury." *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 n.8 (1987). The nub is whether the error had, or might have had, an effect on the jury and whether the error contributed to, or might have contributed to, the verdicts. See *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978). As noted in the first part of our opinion, there was a serious question whether, had evidence of the defendant's mental illness been presented to the jury through his expert witness, it might have put his impairment in a different light. The defendant's direct testimony did make the point, although obliquely, that the impulsive behavior could have occurred in the absence of alcohol consumption. The evidence of his impairment by alcohol, while persuasive, was not overwhelming. Nor did the judge, in her instructions to the jury, in any way deal with the inadmissible refusal evidence. We do not fault her for the omission because defense counsel did not ask for a curative instruction. Nevertheless, the admission of the refusal evidence, even with its ambiguity, could have tipped the scales against the defendant's theory of defense. The jury could have reasoned that, despite the defendant's explanation of his behavior, the fact that he initially refused the test was a strong indicator that he had had too much to drink. We conclude that there was prejudice because the refusal evidence may have had an effect on the jury's resolution of the issue in the case.

---

[2]In *Commonwealth* v. *Blais*, 428 Mass. 294 (1998), the Supreme Judicial Court limited the holding of *McGrail*. The court noted that, while a refusal may not be entered in evidence, upon a reasonable search, the defendant has no right to refuse to produce real or physical evidence. *Commonwealth* v. *Blais*, 428 Mass. at 299 n.3. The court further noted that the results of a roadside sobriety test are considered analogous to physical, not testimonial, evidence. *Ibid.* This, however, does not affect the holding in *McGrail* that the refusal to take a sobriety test cannot be entered in evidence against the defendant. See *Commonwealth* v. *Blais*, 428 Mass. at 299.

We have considered the defendant's arguments concerning the prosecutor's cross-examination on his past use of alcohol, the admission of booking photographs, Maguire's testimony concerning the need for the drivers of other vehicles to brake hard or veer to avoid hitting the defendant, the defendant's claim that the Commonwealth violated his rights under G. L. c. 263, § 5A, and the judge's alleged bias in favor of the Commonwealth. They are without merit.

The judgments are reversed, and the verdicts and finding are set aside. The case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*