COMMONWEALTH vs. JAMES CARNELL.

No. 98-P-2144.

Middlesex. October 6, 1999. - December 7, 2001.

Present: PERRETTA, LAURENCE, & RAPOZA, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Blood alcohol test, Breathalyzer test, Redirect examination. *Constitutional Law,* Self-incrimination, Breathalyzer test.

The record at the trial of a complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor indicated that the defendant adequately preserved for appellate review his objection that the jury had erroneously been told that he refused to take a blood test. [359-360]

At the trial of a complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, the judge's failure to cure testimony incorrectly asserting that the defendant refused to take a blood test following his arrest constituted reversible error, where the prosecution's evidence of the defendant's lack of sobriety was not overwhelming. [360-361]

COMPLAINT received and sworn to in the Somerville Division of the District Court Department on February 2, 1998.

The case was tried before *Robert J. McKenna, Jr.,* J.

The case was submitted on briefs.

*John A. Baccari* for the defendant.

*Martha Coakley,* District Attorney, *Stephen C. Hoctor,* Assistant District Attorney, & *Jay V. Lee* for the Commonwealth.

RAPOZA, J. A jury convicted the defendant of operating a motor vehicle while under the influence of intoxicating liquor. On appeal, he argues that the failure to cure testimony incorrectly asserting that he refused to take a blood test following his arrest constituted reversible error. We agree and reverse the conviction.

*Facts.* The jury could have found the following facts. In the early morning hours of January 31, 1998, the defendant, ac-

companied by two passengers, drove through a flashing red light, nearly striking a cruiser driven by State police Trooper James Hanlon. Hanlon signaled the defendant to pull over and asked him to lower his window. The defendant fumbled with the door, but was able to produce a license and registration without difficulty. Asked whether he had been drinking, he answered, "[T]wo beers." As he got out of his car at the trooper's request, he fell against its side. He agreed to submit to field sobriety tests and twice recited the alphabet correctly, but slowly. After being asked to perform a further test, he turned around, placed his hands behind his back, and told Trooper Hanlon to arrest him if he wanted to. Both Hanlon and a trooper accompanying him noted an odor of alcohol emanating from the defendant. Hanlon formed the opinion that the defendant was under the influence of alcohol and arrested him. The other trooper did not form an opinion regarding the defendant's sobriety. A third trooper, who was at the State police barracks where the defendant was booked, testified that the defendant's eyes were glassy and bloodshot and that he smelled of alcohol, but the trooper also did not form an opinion regarding his sobriety. The defendant's two passengers testified that he was sober.

*The inaccurate refusal testimony.* On cross-examination, defense counsel asked Trooper Hanlon if the defendant had, at any time, requested a blood test.[1] Hanlon responded that he did not recall if the defendant had made any such request, either at the time of his arrest or later at the barracks while he was being booked.

On redirect examination, the prosecutor showed Trooper Hanlon a document entitled "Massachusetts State Police Statutory Rights and Consent Form" in order to refresh his memory. Hanlon indicated that it was a standard form presented to all persons

---

[1] The defendant's attorney subsequently told the judge that he had asked this question in an attempt to elicit from Trooper Hanlon that the defendant had requested a blood test at the time of his arrest, so as to demonstrate the defendant's "consciousness of innocence." Prior to trial, the defendant had also moved to dismiss, contending that his right to an independent blood test under G. L. c. 263, § 5A, had been violated. In his accompanying affidavit, the defendant stated that he had requested a blood test at the time of his arrest and again at the State police barracks.

charged with driving under the influence.[2] The defendant's attorney immediately asked for a sidebar conference, the recorded contents of which are inaudible. The redirect examination continued following the conference. Hanlon testified that the consent form contained language advising the defendant of his right to see a doctor; that he had read the form to the defendant; and that its final line was, in "sum and substance," a query "whether or not the defendant would like a blood test." The defendant checked off the "No" box in response to that question, according to the trooper. The form was neither read nor shown to the jury.

At the conclusion of Hanlon's testimony, the defendant again requested a sidebar conference whose recorded contents are also inaudible. The judge called a recess, telling the jury that a problem had arisen concerning the consent form. With the jury absent, the judge held a voir dire at which Hanlon acknowledged under cross-examination that he had checked off "No" on the consent form in response to the defendant's refusal of a breathalyzer test, and that he had underlined the word "breath" on the form's final question. See note 2, *supra*. He further testified that the only available means for determining a defendant's blood alcohol level at the barracks was a breathalyzer test. Upon completion of the voir dire, defense counsel unsuccessfully moved for a mistrial. The jury returned to the courtroom and Hanlon was excused from the stand.

During their deliberations the jury raised two questions contemporaneously:

"Is it a law that all possible defendants for drunken driv-

---

[2]The form contains the following relevant information: (1) a section headed "Rights to a Doctor" describes the right of the person in custody, under G. L. c. 263, § 5A, to be examined by a physician of that person's choice at his request and at his expense; (2) a section headed "Rights to a Telephone Call" describes the person's right, under G. L. c. 276, § 33A, to use the telephone; and (3) a section headed "Opportunity to Submit to a Chemical Test" informs the person of his "opportunity," under G. L. c. 90, § 24, "to submit to a chemical test to determine your blood alcohol concentration" along with the "right," upon completion of that test, to a comparison blood test at his own expense. The final line of the form asks: "Do you consent to submit to a chemical test (breath/blood) to determine your blood alcohol concentration?" Boxes labeled "Yes" and "No" follow.

ing be given a breath[a]lyzer? If so, can we consider the fact that a breath[a]lyzer test result was not introduced?

"Can we consider the blood test statement where the defendant checked no? We do not remember if you had it stricken from the record."

The judge instructed that both questions concerned information not in evidence and that the jury were not permitted to speculate about such matters. He further instructed that the document referring to a blood test was not in evidence and that information it contained was not before the jury.[3] After the guilty verdict, the defendant moved for a new trial on the ground that the jury had erroneously been told that he refused a blood test. The motion was denied.

*Preservation of appellate rights.* The Commonwealth contends that the defendant failed to preserve the issue of the blood test refusal testimony because he did not object on the record during Trooper Hanlon's redirect examination. The record shows that defense counsel requested a sidebar conference as soon as the trooper mentioned the consent form. It is reasonable to infer that this recorded conference, which was inaudible and could not be transcribed, alerted the trial judge to the defendant's objection. In the circumstances, it would have been necessary to object at sidebar in order to prevent the jury from hearing defense counsel contend that the consent form did not show that the defendant had refused a blood test, but rather that he had refused a breathalyzer test. See *Commonwealth* v. *Zevitas,* 418 Mass. 677, 682-683 (1994) (discussing the highly prejudicial effect of evidence of a defendant's refusal to take a breath test to measure his blood alcohol level).

The judge was clearly alerted to the issue after the second sidebar conference, following which he told the jury there was a problem with the consent form and then held a voir dire concerning the blood test refusal testimony. The defendant also persevered in raising the issue of the refusal testimony in his motions for a mistrial and for a new trial. We consider the objection to have been adequately preserved and review the

---

[3]The trial judge did not, however, instruct the jury to disregard Hanlon's testimony regarding the defendant's purported refusal of a blood test.

failure to cure the inaccurate testimony concerning the refusal of a blood test under the prejudicial error standard. See *Commonwealth* v. *Choice*, 47 Mass. App. Ct. 907, 908 (1999) (citation omitted) ("In the face of the judge's adverse ruling, it was not necessary, to preserve the point for appeal, to intone a ritualistic objection . . . . The matter had been adequately called to the trial judge's attention"). See also *Commonwealth* v. *Woods*, 427 Mass. 169, 173-174 (1998); *Commonwealth* v. *Repoza*, 28 Mass. App. Ct. 321, 329 n.6 (1990) (" 'The purpose of the objection is to insure that an alleged error is brought clearly to the Judge's attention in order that the Judge may squarely consider and decide the question and rectify the error, if any.' Smith, Criminal Practice and Procedure § 1775 [2d ed. 1983]").

*Failure to cure admission of inaccurate, prejudicial testimony.* Once defense counsel raised the issue of whether the defendant had requested a blood test, it was well within the judge's discretion to permit the prosecution to refresh Hanlon's recollection on redirect concerning the very question that the defense had raised. "Having opened the door to this information, the defendant essentially invited the Commonwealth to address the issue on redirect examination." *Commonwealth* v. *Johnson*, 412 Mass. 318, 325 (1992), quoting from *Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991). See *Commonwealth* v. *Maltais*, 387 Mass. 79, 92 (1982) (scope of redirect is within the discretion of the trial judge). Compare *Commonwealth* v. *Seymour*, 39 Mass. App. Ct. 672, 674 (1996) (the defendant's testimony that she had been offered a breathalyzer test "did not grant a license to the Commonwealth to inquire further and ask whether she had refused to submit to [such a] test").

The problem in this case is that Hanlon's blood test refusal testimony was factually incorrect, as he acknowledged when he testified on voir dire that the defendant had actually refused a breathalyzer test. The inaccuracy could not be cured by allowing defense counsel to cross-examine the trooper further, because the result would have been to inform the jury that the defendant had, in fact, refused a breathalyzer test. Such testimony would have violated the defendant's privilege against self-incrimination under art. 12 of the Massachusetts Declaration of Rights as well as the provision of G. L. c. 90, § 24(1)(*e*),

making inadmissible at trial the refusal of an accused to submit to a chemical test to determine his blood alcohol level. See *Commonwealth* v. *Zevitas*, 418 Mass. at 683 (statutorily mandated instruction violated privilege against self-incrimination because it could have led the jury to conclude that the defendant had refused to submit to a breathalyzer test); *Commonwealth* v. *Seymour*, 39 Mass. App. Ct. at 673-677 (discussing constitutional and statutory prohibitions against admitting evidence of refusal to submit to a breathalyzer test). Nor would the situation have been remedied had the trooper simply retracted the erroneous testimony that the defendant had refused a blood test, since that would have suggested that the defendant's refusal, indicated by the check in the "No" box, related to another type of test, inferentially the breathalyzer. In any event, nothing was done to cure the error.[4]

We conclude that the failure to cure the inaccurate refusal testimony was prejudicial. The prosecution's case was not overwhelming. Although evidence of the defendant's lack of sobriety was presented, two of the three State troopers who testified did not conclude that the defendant was under the influence of alcohol. When Trooper Hanlon tested the defendant's sobriety by asking him to recite the alphabet, he twice recited it, slowly but correctly. Lastly, the defendant's two passengers testified that he was sober. The jurors' questions about blood and breath tests indicated that they were concerned about whether the defendant had refused a test to measure his blood alcohol level. The inaccurate testimony that the defendant had refused a blood test could well have influenced their decision to convict him.

*Judgment reversed.*

*Verdict set aside.*

---

[4]The judge's limiting instructions in response to the jurors' questions during deliberations focused on the content of the consent form and did not refer explicitly to the trooper's refusal testimony. The instructions came too late and did not cure the error. See *Commonwealth* v. *Scott*, 359 Mass. 407, 409 (1971).