NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-718

COMMONWEALTH

vs.

MIHAIL LUJAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the Superior Court, the defendant, Mihail Lujan, was convicted of rape, in violation of G. L. c. 265, § 22 (b). On appeal, the defendant argues that his conviction must be vacated because his confrontation rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights were violated by the admission of testimonial hearsay through the testimony of two substitute analysts.[1] We agree and hold that substitute analyst testimony dependent on the original, nontestifying analysts' notes and reports was erroneously admitted in

---

[1] The Commonwealth concedes that the erroneous admission of testimony by the two substitute forensic analysts was likely not harmless beyond a reasonable doubt.

violation of the defendant's confrontation rights.  Because the testimony at issue was not harmless beyond a reasonable doubt, we vacate his conviction.

Background.  The defendant waived his right to a jury trial, and a bench trial was held on April 24 through 25, 2023.  We summarize the evidence as presented to the trial judge.  The victim, Jane,[2] was seventy-two years old in 2013.  Jane had lived in a nursing home since 2005.  She suffered from dementia, could not move without assistance, and could not communicate through speech.  On March 27, 2013, a nurse's aide, Elizabeth Martinez, entered Jane's room to reposition her.  Martinez clipped a sensor alarm on a pad and placed it on Jane's chest, which would activate a light outside the door if Jane made any movement.  Approximately five minutes after stepping away from Jane's room, Martinez noticed that Jane's sensor alarm had activated.

When Martinez walked into Jane's room to check on her, she saw that Jane's legs were dangling from the lowered side-rail, her adult diaper was ripped open, her genital area was exposed, and the defendant was standing near her "private area with his hands on the bed."  Martinez recognized the defendant as a housekeeper who worked at the nursing home.  Martinez testified

_____

[2] Pursuant to G. L. c. 265, § 24C, we refer to the victim by a pseudonym.

2

that Jane was on her side, looking back at the defendant, "her eyes were so red and vague," and she kept raising her finger in the same way she typically communicated "no" nonverbally to staff.

Jane was transported to the hospital for a sexual assault examination. At trial, Kathleen Dennis, the sexual assault nurse examiner, testified that her examination included visually examining the vaginal area, inserting a speculum into the vaginal area, and taking two sets of swabs of Jane's vaginal walls and cervical areas, external genital area, and perianal area.

The Commonwealth called Stephanie Waite, a forensic scientist working for the State police crime laboratory (crime lab), to testify regarding a screening test for the presence of semenogelin[3] conducted on vaginal swabs taken from Jane's sexual assault examination. The screening test was conducted by analyst Nicole Kronin, who did not testify at trial.[4] Waite did not observe the procedures Kronin used, though she did view the test after it was completed. Waite testified that she

---

[3] Waite defined "semenogelin" as "a part of seminal fluid residue."

[4] Kronin was no longer employed at the crime lab by the time of the trial.

familiarized herself with the case and the testing by "review[ing] the case file, which includes [Kronin's] notes, and also the reports that she wrote." Waite further testified there was a screening test done on the vaginal swabs and that, "based on [her] review of the file," the result was positive for semenogelin.

The Commonwealth also called Kathleen Gould, who was the technical reviewer of the DNA testing conducted on the vaginal swabs by original analyst Kimberly Bonner.[5] Gould reviewed Bonner's case file, including the worksheets that Bonner created as she performed the testing. Gould then testified to her opinion that "from Item 1-2-03.1, the vaginal swabs, a male DNA profile was obtained [by Bonner]." Gould opined that Bonner developed "a suitable profile" from the vaginal swabs that she used to compare with the DNA standard developed from a saliva swab of the defendant. Gould compared the DNA profile obtained from the vaginal swabs and the DNA profile from the saliva swab of the defendant and concluded that those profiles matched, meaning that "the expected frequency of occurrence of this DNA profile [found in] the vaginal swabs is approximately one in

---

[5] Bonner, who did not testify at trial, was no longer employed by the crime lab at the time of trial. Bonner developed a male DNA profile from a vaginal swab obtained during Jane's sexual assault examination. Bonner also developed a DNA profile from a saliva sample the defendant provided.

4

1,335 male individuals, which excludes 99.92 percent of the male population."

The defendant testified that when he entered Jane's room to clean it, Jane's bed rail was lowered. He stated he was worried she might fall down "because she was on the edge, and the guardrail was down," and that he was raised to "immediately rush to help [others]." He tried to push Jane back toward the center of the bed, grabbing her towards the back and legs, and the diaper "got loose" when he tried to move her. The defendant testified that he did not see or touch her vagina, though he "probably touched a little bit of her towards her back, toward her thigh." The defendant said he then tried to raise the bed rail, and Martinez walked into the room.

On April 25, 2023, the judge found the defendant guilty of rape, in violation of G. L. c. 265, § 22 (b), and sentenced him to from ten to twelve years in State prison. This appeal followed.

Discussion. The Sixth Amendment to the United States Constitution provides criminal defendants "the right . . . to be confronted with the witnesses against [them]." The confrontation clause bars the admission of "testimonial statements" of an absent witness unless they are "unavailable to testify, and the defendant ha[s] had a prior opportunity" to

5

cross-examine them.  Crawford v. Washington, 541 U.S. 36, 53-54 (2004).  This prohibition "applies only to testimonial hearsay," a phrase that contains two limits.  Smith v. Arizona, 602 U.S. 779, 784 (2024), quoting Davis v. Washington, 547 U.S. 813, 823 (2006).  First, the "testimonial" aspect of the clause limits application to those statements whose primary purpose is to "establish or prove past events potentially relevant to later criminal prosecution" (citation omitted).  Michigan v. Bryant, 562 U.S. 344, 356 (2011).  Second, out-of-court statements offered for proof of their truth are barred.  See Smith, supra at 785.  "The prohibition against testimonial hearsay applies 'in full to forensic evidence.'"  Commonwealth v. Gordon, 496 Mass. 554, 561 (2025), quoting Smith, supra at 783.

During the pendency of this appeal, the United States Supreme Court addressed in Smith, 602 U.S. at 783, the admissibility of a substitute expert's opinion dependent on the accuracy of a non-testifying analyst's notes and reports.  The majority of the Smith Court concluded that "[w]hen an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into evidence for their truth."  Id. "[T]he Confrontation Clause will bar [the] admission" of such

6

statements if they are also testimonial.[6] Id. The Smith majority emphasized that the government may not make an end run around the confrontation clause by calling a substitute expert in place of the original analyst where "the [substitute expert's] proffered opinion merely replicates, rather than somehow builds on, the [absent] testing analyst's conclusions." Id. at 799. Under these circumstances, the Supreme Court recognized the defendant had a "right to cross-examine the testing analyst about what she did and how she did it and whether her results should be trusted." Id.

After its decision in Smith, the Supreme Court granted petition for writ of certiorari, vacated the judgment, and remanded this court's unpublished decision in Commonwealth v. Gordon, 103 Mass. App. Ct. 1112 (2023), for further consideration. See Gordon v. Massachusetts, 145 S. Ct. 412 (2024). On September 17, 2025, the Supreme Judicial Court issued its decision in Gordon, acknowledging that, as in Smith, the substitute expert's testimony at issue merely replicated the testing analyst's conclusions. Gordon, 496 Mass. at 555, citing Smith, 602 U.S. at 798-799. The Gordon Court decided that a nontestifying analyst's statements as contained in her notes,

---

[6] The Smith Court did not review whether the statements at issue were testimonial. Smith, 602 U.S. at 801.

7

and reviewed and relied on by the substitute expert, amounted to testimonial hearsay.[7]  Gordon, supra at 567-569.  The Gordon Court then concluded that

> "where a substitute expert's opinion is dependent upon the truth of a nontestifying analyst's testimonial hearsay, the confrontation clause bars admission of the opinion even if the substitute expert is familiar with the testing analyst's laboratory protocols and reviewed the analyst's case file; an expert's opinion based on an absent analyst's test results that depends also on the truth of the analyst's testimonial hearsay as to the processes and protocols she said she followed to obtain those results is precluded by the confrontation clause."

Id. at 575.  The Gordon Court explained that such substitute analyst testimony "is prohibited because the relevant witness against the accused, in a constitutional sense, is the absent analyst."  Id.  The Gordon Court further concluded that

> "[f]ollowing Smith, this aspect of our evidentiary rule, which permits a substitute expert who is a supervisor of the crime lab to provide an opinion regarding raw data generated by an absent analyst that depends on the truth of the testimonial hearsay of an absent analyst as to the processes and protocols she says she followed to obtain the data, no longer comports with the right of confrontation, and the admission of such expert opinion testimony is an error of constitutional dimension."

Id. at 584.

The court vacated Gordon's conviction after concluding that the erroneous admission of the substitute analyst's testimony

---

[7] The nontestifying analyst's "notes purported to document the scientific methodologies [she] used, the practices and procedures [she] followed, the tests [she] performed, and the results [she] obtained."  Gordon, 496 Mass. at 566.

was not harmless beyond a reasonable doubt because the testimony was the only direct evidence of an essential element of the crime.  Id. at 586.

We agree with the parties in this case that the decisions in Smith and Gordon require us to vacate the defendant's conviction.[8]  Similar to Gordon, the testimony of both substitute analysts in this case violated the defendant's confrontation rights:  the testifying analysts had no personal knowledge of the testing at issue, and relied instead on the truth of the absent analysts' testimonial hearsay in arriving at their respective opinions.  Specifically, Waite's testimony that a screening test (performed by Kronin) on the vaginal swabs was positive for semenogelin violated the confrontation clause because Waite's opinion was "based on an absent analyst's test results that depends also on the truth of the analyst's testimonial hearsay as to the processes and protocols she said she followed to obtain those results."  Gordon, 496 Mass. at 575.  Like the substitute analyst in Smith, Waite had no personal knowledge of how the test was performed or whether

---

[8] The court's decision in Gordon, which was dictated by Smith, announced a new constitutional rule that applies to any convictions that were not final prior to that decision.  See Gordon, 496 Mass. at 587.  As the defendant's appeal was on direct review when Smith and Gordon were decided, those decisions apply to his case.

9

there was an error in handling the swabs; instead, she could opine that there was a positive result on the vaginal swabs only because she accepted Kronin's notes and reports as true.  See Smith, 602 U.S. at 798.  See also Gordon, 496 Mass. at 576 (substitute expert's "opinion on the identification of the controlled substance depended on the truth of [nontestifying analyst's] out-of-court statements").  Here, the defendant had no opportunity to cross-examine Kronin, the original analyst.

Similarly, Gould's testimony that the DNA profile that Bonner developed from the vaginal swabs matched the defendant's profile, as developed by Bonner from the defendant's buccal swab, was based on testimonial hearsay -- Bonner's work product -- and thus violated the defendant's confrontation rights.  See Gordon, 496 Mass. at 575.

i.  Preservation of claim.  Having determined that the admission of material testimony by Waite and Gould was in error, we turn to whether the defendant preserved his objections for appeal and the standard of review that accordingly applies.  See Commonwealth v. Roe, 90 Mass. App. Ct. 801, 803 (2016).  Appellate rights as to trial matters are generally preserved by making a contemporaneous objection.  See Commonwealth v. Pisa, 384 Mass. 362, 366 (1981); Mass. R. Crim. P. 22.  However, we may also consider claims of error properly preserved through

10

other means, as long as the trial judge was alerted to the nature of the alleged error.  See Commonwealth v. Carnell, 53 Mass. App. Ct. 356, 359 (2001).  Here, defense counsel properly preserved the claimed error by objecting to the relevant testimony and by moving to strike Waite's testimony about the screening test.

Considered "in the context of the trial as a whole," defense counsel's objections adequately preserved the claimed error of a violation of the defendant's confrontation rights (citation omitted).  Commonwealth v. Jones, 464 Mass. 16, 19 n.4 (2012).  Counsel first noted concerns with the substitute analyst testimony before trial while discussing the Commonwealth's motion in limine to admit that testimony, raising the issue of "testimonial hearsay."  In his objection to Waite's testimony about whether Kronin followed the appropriate lab procedures, defense counsel stated the ground that "we're just reprocessing hearsay into, I guess, an opinion" and raised the concern that Waite lacked "personal knowledge of the test."  He raised this same objection to the testimony about the screening test done on the vaginal swabs.  In the defendant's motion to strike testimony about that test, he argued that Waite could only testify from "hearsay and speculation" and had "no actual knowledge, except for the notes of Ms. Kronin, as to what

11

happened up until that point." Defense counsel concluded by saying, "I think that this is essentially the same as [Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009)], but the only difference being instead of introducing a piece of paper that says it, we call another witness to say it; but it's essentially the same problem."

Defense counsel made the same objections to Gould's testimony. These objections were adequate to preserve the defendant's confrontation rights. See, e.g., Commonwealth v. Depina, 456 Mass. 238, 248 n.8 (2010) (objection adequate to preserve confrontation rights where it conveyed ground that defendant lacked opportunity to cross-examine witness, despite failing to mention the confrontation clause or cite Crawford, 541 U.S. at 54).

Although we conclude the defendant preserved the issues raised in this appeal with timely objections, we note that in Gordon, 496 Mass. at 586-587, the Supreme Judicial Court indicated that the substitute analyst issue as presented may be considered a preserved claim of constitutional error even absent an objection, due to the futility of objecting to such testimony before the Smith decision.

ii. Standard of review. Because the defendant properly preserved his constitutional confrontation rights, the

Commonwealth bears the burden of showing that the erroneously admitted testimony was harmless beyond a reasonable doubt. See Commonwealth v. Tyree, 455 Mass. 676, 700 (2010). The Commonwealth must show that the evidence did not contribute to the verdict. See Commonwealth v. Hoyt, 461 Mass. 143, 156 (2011). The Commonwealth concedes it did not meet its burden in light of the Supreme Judicial Court's decision in Gordon. We agree.

The testimony at issue -- the positive screening test conducted on the vaginal swabs, that Kronin followed procedures in conducting that test, the development of a male DNA profile from the swabs, and the match between that DNA profile and the profile developed from the defendant -- were the Commonwealth's only proof of penetration. The elements of rape include penetration and force. Commonwealth v. Lopez, 433 Mass. 722, 726 (2001). Because the victim was unable to consent, penetration was the central issue at trial. Evidence of semen in the victim's vagina and DNA evidence have been sufficient for a jury to find penetration beyond a reasonable doubt. See Commonwealth v. Fowler, 431 Mass. 30, 33-34 (2000) (sperm found in victim's mouth sufficient to show oral penetration); Commonwealth v. Tavares, 27 Mass. App. Ct. 637, 642 (1989) (semen, twig, and dirt found in victim's vagina sufficient to

13

show penetration).  Without the admission into evidence that there was seminal fluid on the vaginal swabs, or that a male DNA profile matching the defendant was developed from the vaginal swabs, the Commonwealth could not prove penetration.

We thus conclude that the erroneous admission of the testimony of substitute analysts Waite and Gould was not harmless beyond a reasonable doubt and therefore requires that we vacate the judgment of conviction.[9]

Conclusion.  The judgment is vacated, the verdict is set aside, and the case is remanded to the Superior Court to allow the Commonwealth to retry the defendant if it so chooses.

Judgment vacated.

Verdict set aside.

By the Court (Desmond,
  Brennan, & Smyth, JJ.[10]),

Clerk

Entered:  December 10, 2025.

---

[9] We reiterate that the judge did not have the benefit of either Smith or Gordon when he ruled on the issues relevant to this appeal.

[10] The panelists are listed in order of seniority.

14